## George T. Jenkins *vs.* Ellis B. Long and William W. Byrne.

By a written contract the defendants agreed to pay the plaintiff a salary of $1000, payable in monthly instalments of $50 each, "if he sells for them, to such parties as they shall approve, $40,000 during the year, and for all sales above that amount, (deducting bad and doubtful debts,) two per cent. additional." The defendants were also to have the right to dismiss him at any time before the end of the year "by giving him a month's notice to that effect." Held:

That the *equitable* construction of this contract is, that if defendants dismiss the plaintiff before the end of the year the latter is entitled to compensation

Jenkins *vs.* Long & Byrne.

in *proportion* to the amount he was to have received for the *whole year*, including both the contingent compensation of *two per cent.* and the *proportionate* part of the $1000, *provided* his sales for the fraction of the year were at the *rate of $40,000 per annum*, deducting *bad debts.*

In construing contracts it is legitimate to suppose new and different aspects of the case from those which have actually arisen, in order to ascertain whether the rule of interpretation adopted makes every phase which the case *might assume* harmonise with each other.

Where a special contract to pay a certain sum for services for a year provides that the defendant may dismiss the plaintiff at any time during the year upon giving a month's notice, and the latter is *so dismissed;* the contract is not *violated* or *rescinded*, and the plaintiff must recover *upon it*, and cannot resort to a *quantum meruit.*

Evidence in a *quantum meruit* is admissible if the contract has been violated or abandoned by the defendant, or terminated by consent of both parties after it has been partly performed.

Evidence under a *quantum meruit* can only be resorted to where the special contract from having been either violated or rescinded is not sufficient to meet the case.

Where a contract has been fully executed, and nothing remains to be done but the payment of the money, the amount due may be recovered in *indebitatus assumpsit*, and in such case it is not necessary to declare upon or set out the special agreement.

But where the contract remains in full force it must, by virtue of its own terms, constitute the evidence of the agreement itself, even where the plaintiff relies alone upon the common counts; and no other evidence is admissible.

APPEAL from the Court of Common Pleas for Baltimore city.

*Assumpsit* by the appellant against the appellees. The declaration counts upon the special contract set out in the opinion of this court; and also contains a count for work and labor, and the common money counts. Plea *non assumpsit.*

Three exceptions were taken by the plaintiff to the rulings of the court below, (MARSHALL, J.,) all of which are fully stated in the opinion of this court. The verdict and judgment were in favor of the defendants and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Benjamin C. Barroll* for the appellant, argued:

1st. That the evidence contained in the first exception was

admissible as being applicable to the count for work and labor. That the defendants having, by their own act, terminated the contract by discharging the plaintiff from their service, and having thus put it out of his power to perform his contract to its full extent it was *at his election* to go before the jury upon the *quantum meruit.* 1 *Greenlf. on Ev.,* secs. 277, 287, 288. 7 *H. & J.,* 133, *Owings & Piet vs. Low.* 2 *Md. Rep.,* 38, *Bull vs. Schuberth.* 6 *H. & J.,* 38, *Watkins vs. Hodges, et al. Ibid,* 81, *Speake vs. Sheppard.* 9 *Gill,* 288, *Rodemer vs. Hazlehurst.* 2 *Fairfield,* 348, *Jewett vs. Weston.* And further, that the evidence was admissible as affording light to the court by which the true construction of the written contract could be better discerned. See sections from *Greenlf.,* cited above, and 1 *Mason,* 12, *Piesch vs. Dickson.*

2nd. As to the construction of the contract raised by the second and third exceptions the appellant insists, that its true construction is, that the plaintiff is entitled to claim compensation *pro rata, according to the amount of goods sold by him* and not according to *time* as set forth in the defendant's prayer granted by the court below. The contract divides itself into two distinct branches; 1st. It states, that if Jenkins sells to the specified amount of $40,000 he is to receive $1000, which is equivalent to *two and-a-half per cent.* on the $40,000. And this he is to receive without regard to the ultimate payment by the purchasers. And the mode of payment is specified, *viz.,* an advance of $350, and the balance in monthly instalments of $50 each. 2nd. Then with regard to the excess of sales over the $40,000. Upon such sales he is to receive a commission of *two per cent.* at the end of the year, after deducting all bad and doubtful debts, upon which the commission is not to be paid; the meaning and intention being, it is presumed, that the payment of commissions on such shall be suspended until their quality is definitely ascertained. As the sales did not reach the amount of $40,000 the second branch of the contract does not require consideration as to its construction. The contract makes no reference to the ordinary compensation for a clerk or salesman in a store, but has special reference to the *customers* which Jenkins should bring to the

house of the defendants, and beyond this *custom* which he was to introduce he had nothing to do with the general business of the concern. It was for the profit arising to them from this special *custom* the defendants contracted to pay $1000, (or *two and-a-half per cent.*,) for the sale of goods to the extent of $40,000. The whole tenor of the agreement shows it was a *commission on sales*, (by way of salary,) they were to pay, such form of compensation being familiar among merchants in large cities. The contract itself uses the term *"commissions."* The construction contended for by the appellant is natural, equitable, and that by which no undue advantage could be taken by either of the contracting parties. The construction contended for by the appellees would place Jenkins wholly in their power; they could discharge him as soon as the spring sales were over, (and the evidence proves they did so,) and then seek to allow him a compensation not based upon the amount of service rendered, as evidenced by the amount of goods sold, but a compensation based altogether upon time. According to their construction of the contract he might, in three months, have sold within a fraction of $40,000, been discharged, and be entitled to receive a paltry pittance instead of the $1000 for which he had bargained. If Jenkins in five months had sold $40,000 worth of goods there cannot be a doubt he would be entitled to claim the $1000 stipulated to be paid in the contract, which would be equivalent to *two and-a-half per cent.*, and as he has proved, that in five months he sold to the extent of $33,266.50, he insists he is entitled to claim at the same rate of *two and-a-half per cent. on that amount*, as he was debarred selling the further amount to make up the $40,000 by the act of the defendants and not by any default on his part.

*Oliver Miller* and *Robert C. Barry* for the appellees, argued:

1st. As to the first exception: By the terms of the contract *declared upon* and *offered in evidence* by the *plaintiff himself*, he was to receive a specific sum for the service he was to render, and without attempting to show any violation or rescision of this agreement, he sought to repudiate it altogether and

recover upon a *quantum meruit*, by introducing evidence to establish an *implied agreement* totally inconsistent in its terms with those set out in the existing special agreement proved by *himself*, and thereby admitted to be in full force and of binding authority. The rule of law is well settled and *without exception*, that you cannot *imply a contract* where you prove an *express* contract. In *West vs. Flannagan, 4 Md. Rep.*, 56, this court has said: "As a general rule, implied contracts are *only* sustained in order to supply the place of *express agreements*, and we know of *no case* where the latter have been made to yield to the former, unless by the express or implied understanding of the parties that such should be the result. Indeed an *express agreement admitted to be in full force negatives an implied inconsistent agreement relating to the same subject matter.*" The fact that the declaration contains a count for *work and labor* does not affect the operation of the rule. In *Cushman vs. Sims, 2 H. & J.*, 352, the declaration contained the *common counts*, and the court held, that if there was a *special agreement proved* the plaintiff could not recover. In *Story on Cont.*, sec. 15, the rule is clearly and strongly stated: "A contract will be implied only when there is no *express contract, 'expressum facit cessare tacitum.'* If therefore there be an express contract between the parties, the plaintiff in an action to recover the consideration for work and labor done must declare specially thereupon. So long therefore as that contract remains unrescinded he cannot recover the value of his services upon a *quantum meruit*." See also *Chitty on Cont.*, 24, (*Ed. of* 1851,) where the same rule is also stated in the same strong language, and the doctrine announced that a party cannot be bound by an implied contract when he has made a specific contract, " *even although the latter be avoided by fraud.*" See also the cases cited by *Chitty* and *Story* in support of this general rule. But it is said the defendants *terminated* the contract by discharging the appellant from their service, and having put it out of his power to perform his contract to its full extent, it was *at his election* to go before the jury upon the *quantum meruit*. It is undoubtedly true, that if the defendant *violates* the contract or

prevents the plaintiff from carrying it out, (which is equivalent to a *violation* on his part and a fraud upon the contract,) the latter may recover upon a *quantum meruit*. But this rule is confined to cases of *violated contracts* and of *fraud*. Such is not the case here. In discharging the plaintiff the defendants did not *violate* the contract, but simply exercised their unques- tioned rights *under the contract*. The plaintiff's recovery for what is due him must therefore be *under* and not *outside* of the contract. The cases cited in 2 *H. & G.*, 133; 6 *Do.*, 38, 81, and 2 *Md. Rep.*, 38, are not in conflict with, but *sustain* all the views expressed above. But it is further said, this evi- dence was admissible as affording *light* by which the true construction of the written contract could be better discerned. It is difficult to understand how evidence that the value of plaintiff's services for one year was worth from $2500 to $3000, can throw *light* upon the construction of a *written contract*, by which the value of those services for that period was fixed at $1000 if he sold $40,000 worth of goods, and two per cent. commissions on all sales above that amount. If such evidence can be admitted for such a purpose, it is difficult to understand the *use of a written agreement* in any case. If there be any ambiguity in the terms of this contract, it is *patent* upon the face of the instrument itself, and cannot be explained or removed by *extrinsic evidence*. 4 *Md. Rep.*, 498, *Marshall vs. Haney*. Nor is it a case in which evidence of *usage* would be admissible, for such evidence is never admissible to vary or contradict the clear and manifest signification of the terms used by the contracting parties to express their meaning, *nor to oppose or alter a general principle or rule of law*. 6 *Md. Rep.*, 37, *Foley & Woodside, vs. Mason & Son*. "*A usage of trade cannot be set up in contravention of an express con- tract.*" *Chitty on Cont.*, 24, (*Ed. of* 1851.) We therefore insist that the ruling of the court upon the *first exception* can- not be reversed, for with such reversal would go a reversal of *elementary text law*.

2nd. The second and third exceptions relate to the con- struction of the contract in question. Upon these we insist: 1st. That the true construction of this contract is that given to

it by the court below in granting defendants' prayer. The plaintiff was to receive a *salary* of $1000 if he sold during the year $40,000 to such parties as the defendants should approve, and *after selling* $40,000 he was to receive two per cent. commissions on all sums over and above that amount, all bad and doubtful debts, however, to be first deducted. The $1000 *salary* was to be drawn in monthly instalments. The commission of two per cent. on sums over $40,000 was to be paid at the end of the year, when the amount over and above $40,000 should be ascertained. There can be no doubt that the appellant was not entitled to receive aught but the $1000, *if during the entire year* he had sold only $40,000. It is admitted he sold but $33,266.50 up to the 1st of June 1850, when, under the notice given by defendants, in *pursuance of a provision of the contract,* he left their services. The contingency had not then happened by which the plaintiff was entitled to receive any commissions on his sales. He was entitled to draw his *salary* at the rate of $1000 per annum, and no more, because he had not then even sold $40,000, which he was bound to sell before he could make any claim *for commissions.* The sale of $40,000 was clearly a *condition precedent* to the right to receive any *commissions.* If he was to receive a *pro rata* compensation on the sales made, without any reference to the time of service or amount sold, then all that part (which is by far the greater and most important portion) of the contract relating to the *salary* of $1000, and the sale of the $40,000 is *utterly without meaning,* and must *be stricken* from the instrument. We therefore confidently insist that the *pro rata* proportion of the salary of $1000, having reference to the *time* the plaintiff was in the defendants' service, is all that he can claim, and all that in equity and justice he is entitled to. The above is the construction given to the contract by the court below, and is the most favorable for the appellant which, as we conceive, can possibly be placed upon it. But we insist, 2ndly, that this is *more* than, upon a strict and legal construction of the contract, the appellant is entitled to ask. This court must look at the contract as it stands, and put such a construction upon it as the *plain import* of its lan-

guage demands, regardless of any considerations of *hardship* which such a construction may inflict upon the parties. Now what is the plain import of the language here used? We say the plaintiff can recover neither *salary nor commissions, unless he* remained in the service of the defendants, *at their desire,* till the 1st of January 1851, *and* sold for them $40,000 to such parties as they should approve. He did *neither.* How then can he recover anything under this agreement? The contract is, that the defendants "agree to pay Mr. Jenkins a salary of $1000, if *he sells for them, to such parties as they shall approve,* $40,000 *during the year.*" Is there any difficulty in construing this language? *If* he sells the $40,000 during the year, he is to recive *his salary,* if not he is to receive *nothing.* He must perform the *condition* before his right of action *accrues.* It is said he was prevented from performing this condition by the act of the defendants. This is true, but it is equally true that in so doing they *violated* no stipulation of the agreement, but on the other hand merely exercised a right which the plaintiff, by the contract, agreed they should have the power to exercise. He was to remain in their service till the 1st of January 1851, if *they so desired it,* and they were to have the right to dispense with his services *at any time previously by giving him a month's notice to that effect.* This notice *was given* and he left in pursuance of it before he had sold the $40,000. They were not bound to assign any reason for dismissing him; this was left to their own uncontrolled and arbitrary discretion. It may be said this construction makes the contract a harsh, inequitable and one-sided bargain, and puts the plaintiff entirely in the power of the defendants; but the conclusive answer is, you *so stipulated* with "*your eyes open to the rights and powers conferred by the contract, both upon yourself and the defendants.*" 4 *Md. Rep.,* 57, *West vs. Flannagan.* Because a party has entered into an improvident bargain, it is no reason why he should ask relief in a *court of law.* It was a case of greater *hardship* in *Wagner vs. White,* 4 *H. & J.,* 564, where the tenant was held responsible for the rent, though the house was torn down by a mob which he could not resist, and yet the court there say, "the defendant

has bound himself by *express agreement*, without any reservation or exception, to pay the rent, and he *must stand by his contract.* In *Rodemer vs. Hazlehurst,* 9 *Gill,* 292, a contract was made which the court called *"peculiar and one-sided,"* by which the right to rescind it, upon *three days' notice,* was given to *one side only,* and the court held the plaintiff was released, because the required *notice* was not given. Here the *month's notice was given,* and there are no *restrictions* upon the right of the defendants to dismiss the plaintiff from their service at *any time* they chose, and without assigning any reason therefor. The only stipulation in the contract that in the least militates against this view, is that which provides that the salary of $1000 is to be drawn in *monthly instalments,* commencing at the end of January. But it is submitted that this clause is controlled and modified by the great and controlling condition, which, undoubtedly, was the consideration moving to the defendants in the execution of the contract, and upon which alone they agreed to pay the salary, viz., *"the sale by the plaintiff of $40,000 during the year;"* and that each monthly payment was made subject to the condition, that this part of the contract was to be complied with, and in case of failure so to comply, was liable to be refunded by the plaintiff, or to be recovered from him by defendants in case he should refuse to refund.

MASON, J., delivered the opinion of this court.

This is an action of *assumpsit,* the declaration in which contains a count upon a special agreement, a count for work and labor and the common money counts.

At the trial the plaintiff proved, that in virtue of a written contract, which was afterwards produced, he had been in the employment of the defendants from the 1st of January 1850 to the 1st of June 1850, a period of five months, and during that time had sold for them goods to the amount of $33,266.50, which had been duly delivered to the purchasers. He also proved that a written notice from the defendants, dispensing with his services, had been given to him thirty days prior to 1st of June, and that he left their employment in conformity

with such notice. The plaintiff then gave in evidence the written contract between himself and defendants, as follows:

" *Memorandum* of understanding between Long & Byrne and George T. Jenkins for the year eighteen hundred and fifty (1850.) The first named party agree to pay Mr. Jenkins a salary of one thousand dollars if he sells for them to such parties as they shall approve, forty thousand during the year, and for all sales over and above that amount, (2 p. c.) two per cent. additional, the excess over the one thousand dollars to be paid at the end of the year, when the amount of sales shall be ascertained, and the thousand dollars to be drawn in monthly instalments of fifty dollars per month, commencing at end of January, three hundred and fifty dollars being already advanced on next year's salary. Sales made by Mr. Jenkins personally, and orders from his friends and induced by his influence, (the packing of whose goods are to be superintended by him,) to be considered as constituting the amount of his sales, after deducting all bad and doubtful debts at the end of the year, which, under no circumstances, can the two per cent. commission be paid upon. It being further understood, that George T. Jenkins binds himself, under a penalty of five hundred dollars, to continue in the service of Long & Byrne till the 1st of January 1851, if they so desire it, and that they have the right to dispense with his services at any time previously by giving him a month's notice to that effect, to which agreement both parties pledged themselves, this 14th day of November 1849.

> (Signed,)     Long & Byrne, *by E. B. Long,*
> Geo. T. Jenkins."

The plaintiff then offered to prove by several witnesses his competency and character as a business man, and the value of his services in connection with the dry goods business, (being the business in which Long & Byrne were engaged in the year 1850,) and particularly the value of his services to the defendants from the 1st of January 1850 to the 1st of June 1850. And offered further to prove his services worth for the year 1850 from $2500 to $3000. But the court refused to allow the testimony to go to the jury and ruled the same incompetent, which ruling forms the matter of the plaintiff's first exception.

The defendants then proved that the plaintiff had received from them $650.50; and thereupon the case was closed.

The plaintiff then asked the court to instruct the jury, "that the true and legal construction of the contract offered in evidence is, that the plaintiff is entitled to receive for his services a *pro rata* compensation, to be estimated upon the amount of goods sold by him while in the employment of the defendants." But the court refused so to do and the plaintff excepted.

The defendants then prayed the court, &c., "that if the jury find from the evidence that the defendants contracted with plaintiff, as set out in the contract, and that plaintiff entered into the service of the defendants on the 1st of January and remained in their service till 1st of June, (five months,) and then left their service in consequence of notice from defendants, in pursuance of said contract, the plaintiff is only entitled to recover in this action at the rate of $1000 *per annum* for the time he was so in defendants' service, and that from such amount must be deducted the amount of defendants' bill filed in this case and admitted by plaintiff to be correct." This prayer was granted and the plaintiff also excepted.

This case depends upon the proper construction of the written contract between the plaintiff and defendants. It is not a case where evidence in a *quantum meruit* would be admissible as if the contract had been violated or abandoned by the defendants, or where it had been terminated even by the consent of both parties after it was only partly performed. Such were the cases of *Watkins vs. Hodges*, 6 *Har. & Johns.*, 38; *Howard vs. Rail Road Co.*, 1 *Gill*, 311; *Rodemer vs. Hazlehurst & Co.*, 9 *Gill*, 288; *Bull vs. Schuberth*, 2 *Md. Rep.*, 38; *Balt. & O. R. R. Co. vs. Resley*, 7 *Md. Rep.*, 297.

The defendants did not violate the terms of the agreement in dismissing the plaintiff, but in doing so they acted in strict conformity with them. Notwithstanding this dismissal of the plaintiff, it was nevertheless as much a perfectly executed and an entire contract between both parties as if it had continued for the whole year and as if the plaintiff had sold $40,000 worth of goods, and it was, therefore, as much the subject of

a special action. Evidence under a *quantum meruit* is only resorted to where the special contract, from its having been either violated or rescinded, is not sufficient to meet the case. But here such is not the fact. The construction which we place upon this contract makes it ascertain, by force of its own terms, the precise amount of compensation which is due the plaintiff, and therefore there is no necessity to resort to evidence out side of the contract to ascertain, upon a *quantum meruit*, what that compensation should be or what the services were worth.

The question involved in the first exception is not one of *pleading* but one of *evidence*. There is no doubt that where the contract has been fully executed and nothing remains to be done but the payment of the money, the amount due can be recovered in *indebitatus assumpsit*, and it is not necessary in such case to declare upon or set out the special agreement. But where the contract remains in full force, as in this case, it must constitute, by virtue of its own terms, the evidence of the agreement itself, even where the plaintiff relies alone upon the common money counts, and no other evidence will be admissible.

Surely the defendants were entitled to whatever advantage they may derive from the provision in the contract, which authorises them to terminate it by dismissing the plaintiff after thirty days' notice. But if by doing so, the defendants are to be treated as having so far abandoned the contract as to permit the plaintiff to resort to evidence in *indebitatus assumpsit* instead of the special contract, what better off are they than if no such provision was embraced in the agreement? In other words, the effect upon the defendants would be precisely the same, whether, in dismissing the plaintiff, they violated the contract, or whether, in doing so, they pursued its strict letter and spirit.

We are, therefore, of the opinion, that the evidence embraced in the first bill of exceptions was properly rejected. It sought to substitute an implied agreement in the place of the positive contract between the parties, which, as we shall presently show, though executed, was still in full force and virtue, unrescinded or unviolated by either party.

The equitable construction of this contract is evidently this: If the defendants should think proper, before the end of the year, to terminate the contract and dismiss the plaintiff, the latter would be entitled to compensation for the fraction of the year in proportion to the amount he was to have received for the whole year, and this would include as well the contingent compensation of two per cent. as the proportionate part of the $1000; provided, however, that the sales made for the fraction of the year had been at the rate of $40,000 per annum. Thus, to entitle the plaintiff to recover for the five months he was in the defendants' service, it must appear that he sold goods in that time to the amount, at least, of $16,666.66, which sum bears the same proportion to $40,000 that five months bear to one year. This having been shown, he became at once entitled to his share of the $1000 in the proportion also of five to twelve, which is $416.66$\frac{2}{3}$. By the admissions in the record it appears, that the plaintiff, in the five months, sold goods to the amount of $33,266.50, which was an excess of $16,599.83 over the sum necessary to entitle him to claim compensation. Upon this excess he was entitled to two per cent. commissions, which, provided there were no bad debts, would amount to $331.99, which, added to the proportion due on his fixed salary, would make the plaintiff's claim, on the 1st of June 1850, the time he was dismissed, $748.65$\frac{2}{3}$. Deducting the account of the defendants, which is admitted to be $650.50, the balance due the plaintiff would be $98.15$\frac{2}{3}$, with interest. As before said, this sum would be subject to be reduced upon proof that any portion of the sales were bad debts, upon which, by the terms of the contract, he was to have no commissions.

From what we have said, it follows, that the construction of the contract contended for by the appellee, namely, that there could be no recovery in this case, either of any fraction of the fixed salary or the contingent per centum until after an actual sale of $40,000 worth of goods had been made, is wholly untenable. The opposite suggestion, that the appellant would be entitled to 2$\frac{1}{2}$ per cent. on the sales actually made while they continued below $40,000, which is at the rate of $1000 upon $40,000 is equally unsupported by the terms of the agreement. The

effect of the latter construction would be to allow the plaintiff a greater rate of compensation for the five months than he would have been entitled to if he had continued in service till the end of the year, and had sold at the same ratio; whereas it is manifest from the terms of the agreement, that the contract, although made for a whole year, nevertheless contemplated a case of a segregation or division of it into fractions of a year, and that the compensation to be allowed for such fraction would be determined by the standard adopted for the whole year.

It is proper in construing contracts, not to confine ourselves to the particular state of case that has arisen under it, but it is legitimate for us to test the correctness of our impressions upon the particular state of facts that may be presented by the record, by supposing new and different aspects of the case, in order to ascertain whether the rule of interpretation adopted makes every phase which the case might assume harmonise with each other.

That the view we have taken of this contract is the correct one, appears manifest to our minds from the following illustrations: Suppose the plaintiff had sold goods, say at the rate of $200,000 for the year, the commissions on the excess over $40,000, added to his fixed salary, would amount to $4200. To avoid the payment of these commissions it would be only necessary for the defendants to give notice, on the 30th of November, for the purpose of dismissing the plaintiff, and thus on the 30th of December, one day only before his claim for the full year's compensation would be consummated, he would find himself bereft of the fruits of his labors, (the commissions,) for the previous 364 days of the year, and that too without any default or misconduct on his part. This might be inevitably one of the results of the construction contended for by the appellee.

Again, suppose the defendants should think proper, in two months, to dismiss the plaintiff, and that in that time he had sold $40,000 worth of goods, if the construction contended for by him be correct, he would be entitled to $1000, whereas by the rule we have adopted he would be entitled to only

v.8

Jenkins *vs.* Long & Byrne.

$833.33⅓. If it were otherwise and our rule of construction were not adopted the contract would be without mutuality, and would be susceptible of great injustice.

The contract further provides, that "the thousand dollars to be drawn in monthly instalments of fifty dollars per month." This provision of course rests upon the assumption, that the sales were to be at least at *the rate* of $40,000 per annum; and it furnishes another illustration, that notwithstanding the contract might be terminated before the end of the year, still it was, for the fraction of the year in which it might remain in force, to be regarded as an entire, executed contract.

The construction placed upon this contract, by the court below, being in our judgment erroneous, we must reverse the judgment and remand the cause, in order that the jury, upon a subsequent trial, may be instructed in accordance with the views herein expressed.

*Judgment reversed and procedendo awarded.*

ECCLESTON, J., delivered the following separate opinion:

By the terms of the agreement the clerk was to receive as a salary $1000, if he sold, to such persons as the defendants should approve, $40,000 worth of goods during the year, and two per cent. for all sales above that amount. At the end of five months the clerk was discharged, up to which time he had sold $33,266.50, from which no abatement is claimed on account of sales to improper parties. The sales being made within the year, and not exceeding $40,000, according to my construction of the contract, and in view of the circumstances disclosed by the record, I think the clerk had a right to claim 2½ per cent. upon $33,266.50, because a salary of $1000 for selling goods amounting to $40,000, is at the rate of 2½ per cent. on the latter sum. Of course the defendants should be credited with the payments made by them.

I concur with the majority of the court in reversing the judgment, but not in their construction of the contract.