# WILLIAM T. TOWNES *vs.* JOHN CHENEY.

*Contract to Pay Made on Condition Not Fulfilled—No Recovery Under Quantum Meruit When Special Contract Not Performed and Not Waived or Broken by Defendant.*

Plaintiff, who had a contract for the services of a jockey in riding his race horses during certain years, transferred the contract and the right to the services of the jockey to the defendant under an agreement which provided as conditions of its efficacy that the jockey's father should consent to the transfer and that it should also be approved by a Jockey Club. In consideration of the transfer, defendant gave to plaintiff a promissory note for $500. In an action on the note, *held,* that since the father of the jockey had refused his assent to the transfer and it had not been approved by a Jockey Club, the plaintiff is not entitled to recover.

*Held,* further, that the plaintiff is not entitled to recover on a *quantum meruit* for two months' services rendered by the jockey to defendant, since the special contract sued on had not been performed, or abandoned by the parties, or its performance prevented by the defendant.

*Decided January 12th, 1911.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*A. P. Shanklin* and *Alex. Preston* (with whom was *Carter Lee Bowie* on the brief), for the appellant.

*Z. Howard Isaac* (with whom were *Jas. Fluegel* and *G. G. Wilson* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This case originated in a non-resident attachment brought by the appellee against the appellant, the alleged evidence of indebtedness, being the following paper, annexed to the affidavit.

"$500.                    WASHINGTON, D. C., March 30th, '08.

"Ninety days after date I promise to pay to the order of John Cheney the sum of five hundred dollars for value received in a certain contract on Keating transferred to me under terms of special contract filed with the Jockey Club this day.

                            "WM. T. TOWNES."

The short note contained the usual common counts and a special count "For money due to the plaintiff by the defendant on the note annexed to this declaration, for the sum of $500.00 due June 30, 1908, and not paid by the maker Wm. T. Townes as per the tenor thereof."

An amended account was afterwards filed, with leave of the Court, as follows:

"Wm. T. Townes to John Cheney,     Dr.

"To amount due on paper writing March 30th, 1908, being drawn to the order of John Cheney by Wm. T. Townes, $500.00.

"To amount due for first call on services of Jockey William Keating from March 30th, 1908 to July 1st, 1908, $500.00.

"This last item being an alternative item of the first item herein set forth.

"Total amount due, $500.00, together with interest from July 1st, 1908."

The attachment was dissolved by bond and the summons case came up for trial on the usual general issue pleas and a special plea that the paper writing was delivered in escrow and upon conditions which had not been complied with.

The plaintiff was the owner of and was interested in race horses and horse racing, and the defendant, who resided in Virginia, had a stock farm where he raised horses which he also employed in racing, and in March 1908, each of them had some horses on the track at Bennings, near Washington.

Mr. Cheney then had in his employment as a jockey, Wm. J. Keating, a boy then fifteen years of age, who was regularly apprenticed to him by an indenture dated March 27th, 1907, between Cheney and the boy, and the boy's father Michael Keating. This apprenticeship was for three years renewable for a further period of two years at the pleasure of said Cheney. Keating was to receive $15 per month for the first year, $20 per month for the second year, and $25 per month for the third year and was to be instructed in the art or trade of a jockey, but was not to ride for any other stable than that of John Cheney during his apprenticeship, except upon engagements of said Cheney and under his direction.

Cheney's horses became sick at Bennings, and for that reason he testified he wished "to sell" Keating, and on March 30th, 1908, he entered into a written contract with Mr. Townes purporting to transfer to him the unexpired term of said apprenticeship, and any renewal made under the terms of the apprenticeship. The language of the contract was that Cheney "sells unto the party of the second part, first call on said boy's services during the term of the (original) contract yet unexpired and during any renewal thereof," * * *. It is agreed that the party of the first part shall have second call on said boy's services by giving reasonable notice of his desire to use him, said Townes not requiring his services for any such race. The original contract with said boy referred to in this instrument is now on file with the Jockey Club."

The note which was the basis of the attachment was executed at the same time, and Mr. Cheney testified that it was

then put in the hands of Mr. Osborne, a mutual friend of the parties, to whom Mr. Cheney then said: "If Mr. Keating objects, or anything of that sort of course it won't go, and so he gave the note to Mr. Osborne and if all right he will send the note to you, and if it is not he will tear it up, and that this was mutually agreed to."

Mr. Townes testified that "the note was delivered to Mr. Osborne to hold until approval of the Jockey Club. * * * The note was for 90 days and was not to be effective until the boy's parents consented to it and the Jockey Club approved. Rule 153 of the Jockey Club provided that before the contract becomes effective it must be filed with the Jockey Club, and must be approved by the Stewards, * * * and the club will not approve a transfer unless the parents consent." The contract of transfer was filed with the Jockey Club April 2nd, 1908, and its receipt acknowledged in due course, but on April 22, 1908, the Secretary of the club wrote Mr. Townes informing him that he had returned it to Mr. Cheney, "as it had not been approved by the boy and the boy's parents." Mr. Cheney admitted he wrote for the consent of the boy's parents and received no reply, and Mr. Townes testified that the boy's father told him not to pay Mr. Cheney a cent, as he would not consent to the transfer, and Michael Kelly who was a trainer for Mr. Townes testified he heard the boy's father tell Mr. Townes not to pay Cheney, that he objected to the transfer. The boy worked for Mr. Townes until latter part of June, 1908, and he paid him $20 a month during the time he worked for him. He informed Cheney on June 10th, 1908, that Keating's father would not consent to the transfer and demanded the return of his note according to the agreement, Osborne having delivered it to Cheney supposing the receipt of the Jockey Club for the filing of the contract of transfer warranted him in doing so. The defendant offered four prayers, withdrawing the case from the jury.

The ground of the first prayer was that the undisputed evidence shows that the consent of the boy's father was necessary to the transfer and that such consent was refused.

The ground of the second prayer was that there was no legally sufficient evidence of the approval of the transfer by the Jockey Club.

The ground of the third prayer was that there was no legally sufficient evidence of the consent of the father to the transfer.

And the ground of the fourth prayer was that there was no valid delivery of the note.

All these prayers were refused, and the case went to the jury without any instructions, and a verdict was rendered for the plaintiff for $300.

The record does not disclose any reason assigned by the Court for this ruling, but the appellant in his brief states that the Court conceded there could be no recovery on the contract, but held there could be a recovery on a *quantum meruit* for the two months' service of the boy while awaiting the consent of the boy's father to the transfer. If it were conceded that a recovery on a *quantum meruit* could be sustained in such a case, the verdict would still be inexplicable under the undisputed evidence. But we cannot agree that the plaintiff is entitled to recover upon that theory in this case.

In *Jenkins* v. *Long,* 8 Md. 143, the Court said: "Evidence under a *quantum meruit* is only resorted to where the special contract, from its either having been violated or rescinded, is not sufficient to meet the case. But here such is not the fact. * * * It is not a case where evidence in a *quantum meruit* would be admissible as if the contract had been violated or abandoned *by the defendant,* or where it had been terminated *by consent of parties* after it was only partly performed."

In *Denmead* v. *Coburn,* 15 Md. 44, the action was on a special contract, and the declaration contained only the com-

mon counts. The Court said: "If any recovery be had it must be, because the work was *fully performed* and accepted by the parties for whom it was done, or that the contract was *abandoned by the parties to it,* or that *by some act of the party* sought to be charged, the *fulfillment of the contract* was prevented." In the case before us none of the conditions are found, which the Court there said, were necessary to a recovery. The contract was not fully performed. It was not abandoned by consent of the parties. Its performance was not prevented by any act of the defendant.

In *Dougherty* v. *Gring,* 89 Md. 544, CHIEF JUDGE Mc-SHERRY said in a similar case: "There can, in the nature of things, be no *implied* contract where there is an *express* contract. An implied contract arises by operation of law because of the absence of an express contract. As both parties to this controversy insist that there was an express contract, differing, it is true, according to their variant contentions, there can be no recovery on the basis of an implied assumpsit. There can be no recovery under the fourth count on the assumption that there was a special contract unless the contract was fully performed. There is no pretence that the contract sued on was performed. Under these conditions the plaintiff could not abandon the contract and sue on an implied agreement."

We cannot, consistently with the principles laid down in these cases, concur in the recovery which was allowed in the lower Court. We are of opinion that the prayers offered by the defendant directing a verdict in his favor should have been granted and for the error in their refusal the judgment must be reversed, and as there can be no recovery, a new trial will not be awarded.

> *Judgment reversed, without awarding a new trial, costs above and below to be paid by the appellee.*