LINA OLDEWURTEL *vs.* WILLIAM F. BEVAN, TRADING AS WILLIAM F. BEVAN & COMPANY.

*Contracts: abandonment by plaintiff; can not recover under common counts. Building contract: right to withhold part of funds until completion.*

Where there is a subsisting special contract which has not been performed by the plaintiff, and the performance of which has not been waived or performed by the defendant, the plaintiff can not recover on the common counts in assumpsit for its part performance. p. 652

By a contract for the alteration and repair of a building, the owner was to make payments from time to time until 75 per cent. of the payments had been made, and to retain the balance until the completion of the work. When more than 75 per cent. of such payments had been made the building was still incomplete, and the contractor discontinued the work. *Held,* that the owner had the right to stand upon the contract and retain the balance until the work was completed according to the express terms of the contract; and where there was no evidence to show any breach of the contract by the owner

nor any waiver of the breach committed by the contractor the latter would have no right to recover the balance of the contract price.      p. 654

*Decided March 26th, 1912.*

Appeal from the Superior Court of Baltimore City (GORTER, J.).

The following are the prayers that were offered by the plaintiff and the defendant, respectively, at the action of the trial Court on each.

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to instruct the jury that if it finds from the evidence in this case that the defendant, Lena Oldewurtel, made a contract with the plaintiff, William F. Bevan, to make certain alterations in house 225 South Broadway, and if they further find that the contract was abandoned by mutual consent of the defendant and the plaintiff, or if it further finds that the fulfillment of the said contract was prevented by some act of the defendant, Lena Oldewurtel, or her agent, then the verdict must be for the plaintiff. (*Refused.*)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to instruct the jury if it finds a verdict for the plaintiff, according to plaintiff's first prayer, then the plaintiff, William F. Bevan, is entitled to recover such amount as the jury may believe the work, labor and material used by the plaintiff in making the said alterations in house No.225 South Broadway, were reasonably worth, and damages for the breach by the defendant, if they find such breach, and interest at six per cent. from the date of the breach to the day of the verdict. (*Refused.*)

---

*Defendant's 1st Prayer.*—The defendant prays the Court to instruct the jury, that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover. (*Refused.*)

Prayers.

*Defendant's 2nd Prayer.*—The defendant prays the Court to instruct the jury, that under the pleadings there is no evidence in this case legally sufficient to show any legal reason or excuse for a discontinuance by the defendant of the work under the contract offered in evidence. (*Refused.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this case, there is no evidence legally sufficient to show the seventy-five per cent. of the contract price as mentioned in the contract offered in evidence was not paid at the time the said plaintiff discontinued the work, under the said contract, if they so find. (*Granted.*)

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct the jury, that if they shall find from the evidence that the plaintiff and the defendant entered into the contract offered in evidence, under which the work mentioned in the evidence was done at 225 South Broadway, if they shall so find, and if they shall further find, that at the time the plaintiff discontinued the said work, seventy-five per cent. or more of the contract price had been paid; and if they shall further find that the said work had not been completed at the time of said discontinuance, if they so find, and that the discontinuance was by no fault of the defendant, then their verdict must be for the defendant. (*Refused.*)

*Court's Instruction.*—The Court instructs the jury, that if they believe from the evidence, that the plaintiff agreed to make alterations and improvements upon the premises of the defendant for the sum of $4,512.00 under the written contract offered in evidence; and that the plaintiff did considerable work under said contract, but was not able to finish the same on account of financial embarrassment, then the plaintiff is entitled to recover in this action $4,512.00, the contract price of said work, less the sum of $3,779.19, the admitted credit payment, and less such additional sum as the jury may find it would have reasonably cost the

defendant to complete the work in accordance with the contract, and less such damage if any as the jury may believe the defendant may have sustained, by reason of any delay in the work, due to the fault of the plaintiff, if the jury believes there was any delay due to the fault of the plaintiff.

---

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ. —

*George Washington Williams* (with whom was *John H. Richardson* on the brief), for the appellant.

*William H. Hudgins* (with whom was *William C. Schmeisser* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an action of assumpsit upon the common counts brought by the appellee against the appellant, in the Superior Court of Baltimore City, to recover for work done and materials furnished, in remodeling and repairing a building known as No. 225 S. Broadway, Baltimore City, and owned by the appellant.

The work was to be done and the materials were to be furnished by the appellee, as contractors, in accordance with plans and specifications, set out in a written contract between the parties, of the form known as "The Uniform Contract of the American Institute of Architects."

Article 9 of the contract between the parties provides, that it is hereby mutually agreed between the parties hereto, that the sum to be paid by the owner to the contractor for said work and materials shall be $4,512.00, subject to additions and deduction as hereinbefore provided, and that such sum shall be paid by the owner to the contractor in current funds, and only upon certificates of the architect as follows:

Seventy-five per cent. during erection, twenty-five per cent. after completion. This seventy-five per cent. is to be drawn in the amount of $500.00 at a time. Final payment shall be made within ten days after the completion of the work included in this contract and all payments shall be due when certificates for the same are issued.

The building was to be completed in all its details under the contract, to the entire satisfaction of the owner and architect with some exceptions specified in the contract, and the work was to be done under the direction of the architect, and his decision as to the true construction and meaning of the drawings and specifications should be final and conclusive.

The work proceeded upon the building, until the 4th of January, 1911, when a dispute arose between the parties, upon a demand by the appellee for further payments on account of the contract. The demand was refused by the appellant upon the ground that she had paid more than seventy-five per cent. of the contract price and that she was entitled to retain the residue twenty-five per cent. under the contract, until after completion of the building.

The plaintiff testified, thereupon, as he was embarrassed financially, he was unable to proceed with the completion of the work and he then stopped work and placed the matter in the hands of his attorney, for suit, and that the work under the contract was not completed when he stopped it and turned the matter over to his lawyer.

The credit payments made by the defendant and admitted by the bill of particulars filed in the case, on account of the contract, aggregated the sum of $3,162.98. There were two additional payments by way of orders, one for $305, and one for $118.00 drawn by the plaintiff on the defendant, which were accepted and paid by her.

The plaintiff further testified that he had stopped work on the building on or about January 4, 1911, because he had no money to go ahead with the work, and the defendant refused to make any further advances, she claiming

that there was nothing due him at that time, she having advanced more than seventy-five per cent. in accordance with the contract.

That his employees continued the work on the building under the specifications, but not under him, but worked as employees of the defendant and were paid by the defendant; that he had nothing to do with the work after that time, and he approved the following orders for the wages for the men, in order to save the men any trouble and not in recognition of them as his employees.

Order dated January 18, 1911, and signed by the plaintiff, directing the defendant to pay the sum of $97.67 to the men for wages for week ending Friday, January 13, 1911, and charged the same to account of 225 South Broadway.

Order dated January 19, 1911, and signed by the plaintiff, directing the defendant to pay the sum of $85.54, to the men for wages for labor on 225 S. Broadway, for week ending January 20, 1911, and charge same as payment on account of work 225 South Broadway.

Order dated February 2, 1911, and signed by the plaintiff, directing the defendant to pay the sum of $87.98 to the workmen for services in and about premises 225 South Broadway, and charge same to account of William F. Bevan & Company.

Order on the defendant, to pay Edward C. Taylor ten dollars for work done on said building.

Making the total amount, paid by the defendant, $3.779.19.

The plaintiff also testified that Order No. 1, to Lauer and Harper Co. for six hundred and twenty-five dollars; Order No. 2, to Keighley Metal Ceiling Co., for one hundred and eighteen dollars, and Order No. 3, to Chase & Co., for $305, were drawn by him on the defendant, but "he understood they were to be paid by the defendant out of the reserve 25 per cent. and was expected not to mature before the 4th

of January, 1911." But it is admitted that the $625 was actually paid by the defendant before he discontinued the work, and the defendant credited thereby.

The evidence upon the part of the defendant tended to prove that the plaintiff was paid in such sums as he demanded up to the time when she refused to make any further advances and he refused to do any further work under the contract. That at that time she would not make any further payments because she had already paid more than seventy-five per cent. of the contract price, and by the terms of the contract she was not to pay any more until ten days after completion of work. That when the plaintiff stopped work in the early part of January, 1911, the men continued to work on the building and were paid by the defendant on written orders, approved and signed by the plaintiff. That the plaintiff abandoned the work before completion and that the work to be done under the contract was not as yet completed, and that she had expended $470 on account thereof over and above the amount required to be paid.

Upon the facts as thus stated, the plaintiff recovered judgment against the defendant in the Court below for the sum of $679.08/100, and it is this judgment we are now asked on the defendant's appeal to review.

At the trial of the case the defendant reserved three exceptions—two relate to the rulings of the Court upon the evidence, and the third to the action of the Court in refusing to grant the defendant's first, second and fourth prayers, and to the Court's own instruction given to the jury.

The defendant's third prayer was granted, and by this prayer the jury were told that under the pleadings in this case there is no evidence legally sufficient to show the seventy-five per cent. of the contract price as mentioned in the contract offered in evidence was not paid at the time the plaintiff discontinued the work, under the contract, if they so find.

The Court's instruction was as follows: The Court instructs the jury that if they believe from the evidence that the plaintiff agreed to make alterations and improvements upon the premises of the defendant for the sum of $4,512.00 under the written contract offered in evidence; and that the plaintiff did considerable work under said contract, but was not able to finish the same on account of financial embarrassment, then the plaintiff is entitled to recover in this action $4,512.00, the contract price of said work, less the sum of $3,779.19, the admitted credit payment, and less such additional sum as the jury may find it would have reasonably cost the defendant to complete the work in accordance with the contract, and less such damage if any as the jury may believe the defendant may have sustained by reason of any delay in the work, due to the fault of the plaintiff, if the jury believe there was any delay due to the fault of the plaintiff.

It is difficult to perceive upon what theory the Court's instruction was granted in this case.

The suit was in general *assumpsit* on the common counts only, and the work was to be done and the materials were to be furnished according to a special written contract between the parties.

The general rule of law is well settled as stated by this Court in a number of cases that where there is a special contract the recovery, if any, must be by a suit upon the contract and not a suit based upon a *quantum meruit,* and where there has been a breach the party guilty thereof can not abandon his contract and elect to stand upon the common counts.

In *Denmead* v. *Coburn,* 15 Md. 44, the Court said: "There is no special count in the declaration on the contract. If any recovery be had it must be because the work was fully performed and accepted by the parties for whom it was done, or that the contract was abandoned by the parties to it, or that by some act of the party sought to be charged the fulfillment of the contract was prevented." *Gill* v. *Vogler,* 52

Md. 663; *Meyer* v. *Frenkil,* 113 Md. 36; *Pope* v. *King,* 108 Md. 45; *Townes* v. *Cheney,* 114 Md. 362; *Turner* v. *Eagan,* 116 Md. 35; 81 Atl. 877.

The undisputed evidence in the case at bar shows that when the plaintiff stopped the work the contract was not fully performed; the work had not been accepted by the defendant. The contract was not abandoned by the consent of the parties and its performance was not prevented by any act of the defendant.

The plaintiff testified that on January 4th, 1911, he made demand on the defendant for further sums of money on account of the contract. But the defendant refused to advance any more money, as she claimed that she had already paid him more money than was due under the contract; then, as he was embarrassed financially, he was unable to proceed with the completion of the work, and he then stopped work and placed the matter in the hands of his attorney.

In *Meyer* v. *Frenkil,* 113 Md. 45, it was held, where there is a subsisting special contract which has not been performed by the plaintiff or where its performance has not been waived or prevented by the defendant, the plaintiff cannot recover on the common counts in assumpsit for its part performance. *Dougherty* v. *Gring,* 89 Md. 544; *Jenkins* v. *Long,* 8 Md. 143.

The contract price for the work to be performed was the sum of $4,512 and it is admitted that the payments made by the defendant aggregate the sum of $3,779.19. As the defendant had paid or secured to be paid more than the seventy-five per cent. of the contract price at the time of the discontinuance of the work, by the plaintiff, she had a clear right to stand on the contract and retain the twenty-five per cent. until the work was completed under and according to the express terms of the contract.

There is no evidence legally sufficient to support the contention relied upon by the appellee to establish any breach of the contract by the appellant, nor to show a waiver of

the breach committted by the plaintiff, in abandoning the work and refusing to complete it, according to the terms of the written contract.

We are of opinion, that the instruction given at the instance of the Court was clearly erroneous and that the prayers offered by the defendant directing a verdict in her favor under the pleadings and evidence in the case, should have been granted. The defendant's rejected prayers will be set out in the report of the case by the reporter.

As these views cover all the material questions presented on the appeal, the rulings of the Court upon the evidence become unimportant, and will not be considered.

For the error in rejecting the defendant's prayers, and in giving the Court's instruction, the judgment will be reversed, and as there can be no recovery a new trial will not be awarded.

> *Judgment reversed, without awarding a a new trial, costs to be paid by the appellee.*