## CLARENCE W. PERKINS AND ALBERT S. GILL, RECEIVERS,

*vs.*

## R. FRANK BARR.

—

## J. WILLIAM STROBEL

*vs.*

## CLARENCE W. PERKINS AND ALBERT S. GILL, RECEIVERS.

*Insolvent corporations: wages; preferences; insurance companies. Statutes: construction.*

To the language of an Act must be applied the rule common in the construction of statutes, that when two or more words of analogous meaning are coupled together they are understood to be used in their cognate sense, express the same relations and give color and expression to each other. p. 95

The coupling of the words together in a statute shows they are to be understood in the same sense. p. 95

One employed as a manager of an insurance company's office, covering a wide territory, who was to be paid by an overriding commission on all business written in that territory, whether written through him, or sent in direct, whose services required the exercise of business judgment and executive ability of a higher grade than that usually required of clerks, employees or salesmen, does not come under the provisions of section 15, Article 47 of the Code, providing what wages are preferred claims against insolvent employers. p. 99

Where an employee of an insurance company claims to be a preferred creditor for wages or compensation, under a special contract of employment, he must establish that he has complied with the conditions, and earned the wages or compensation, before his claim to any preference will be considered. p. 102

*Decided April 21st, 1915.*

Two appeals in one record from the Circuit Court of Baltimore City. (DAWKINS, J.)

The causes were argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and URNER, JJ.

*A. Herman Siskind* and *Clarence W. Perkins,* for Perkins and Gill, receivers.

*Edwin T. Dickerson* (with whom was *Benjamin R. Powell* on the brief), for J. William Strobel, appellant.

*L. Atwood Bennett* and *Thomas H. Lewis, Jr.,* filed a brief for R. Frank Barr, appellee.

BURKE, J., delivered the opinion of the Court.

The Maryland Insurance Agency Company was incorporated by the Act of 1904, Chapter 246. It was authorized to carry on and conduct a general insurance and brokerage business. On the 13th of April, 1913, its affairs were placed in the hands of receivers by a decree of the Circuit Court for Baltimore City. The assets of the company, as shown by the record, amounted to $5,086.56. The Auditor's report and the account show that after paying Court costs, and some other expenses, and retaining the sum of five hundred dollars for the payment of further costs of suit, there remained in the hands of the receivers the sum of $2,603.82. The debts of the company amounted to $38,314.89.

On June 24, 1914, B. Frank Barr filed a petition in the receivership case in which he asked that the receivers be directed to pay him the sum of one hundred and eighty-four dollars and seventy-four cents as a preferred claim for salary due for February and March, 1913. His petition, after reciting the appointment of receivers, stated that from the first of March, 1912, until the appointment of the receivers he was employed by the Maryland Insurance Agency Company as its clerk, servant, salesman, employee, and as its

manager for Salisbury, Md., at a salary of one hundred and twenty-five dollars per month; that at the time the receivers were appointed the Maryland Insurance Agency Company was indebted to him in the sum of one hundred and eighty-four dollars and seventy-four cents for wages and salary as manager for a portion of the month of February and for the month of March in the year 1913 as clerk, servant, salesman, employee and manager contracted not more than three months anterior to the appointment of receivers, and that no part of the said sum had been paid. The Court allowed the claim as a preference, subject, however, to the usual exceptions, and it was allowed as a preferred claim by the Auditor. Exceptions were filed to the ratification of the account, and from the order of the Court overruling the exceptions to the allowance of the claim as a preference the appeal in Number 83 was taken.

Section 15, Article 47 of the Code, provides that:

"Whenever any person or body corporate shall make an assignment for the benefit of his, her or its creditors, or shall be adjudicated insolvent upon his, her or its petition, or upon the petition of any creditor or creditors, or shall have his, her or its property or estate taken possession of by a receiver under a decree of a court of equity, in the distribution of the property or estate of such person or body corporate, all the money due and owing from such person or body corporate for wages, or salaries to clerks, servants, salesmen or employees contracted not more than three months anterior to the execution of such assignment, adjudication of insolvency, or appointment of receiver, shall first be paid in full out of such property or estate, after payment of the proper and legitimate costs, expenses, taxes and commissions, and shall be preferred to all claims against the property and estate of such insolvent person or body corporate, except the lien claims of such persons as shall hold lien upon such property or estate, recorded at least three months prior to such assignment, adjudication or decree."

Section 15 of Article 47 of the Code of 1888 was a codification of Chapter 383 of the Acts of 1888, providing for the payment of wages and salaries due employees of insolvent employers. That statute had relation to wages or salaries due to clerks, servants or employees. Section 15 of the Code of 1888 was repealed and re-enacted with amendments by Chapter 184 of the Acts of 1896. The effect of this amendment was to make the wages or salaries of *salesmen* a preferred claim. It introduced an additional class of preferred creditors.

The object of this legislation, and the rules of construction applicable to it have been stated in a number of cases in this Court, more particularly in the cases of *Lewis* v. *Fisher,* 80 Md. 139; *Casualty Insurance Company's Case,* 82 Md. 535; *Roberts* v. *Edie,* 85 Md. 181, and *Hess* v. *Jewell,* 85 Md. 235.

In *Lewis* v. *Fisher, supra,* it was held that an attorney at law was not included within the designation of *"employee."* The Court said: "We are not content to dispose of this question by adopting any of the varying definitions of the terms 'Wages,' 'Servants' and 'Employees,' given in different lexicons, because there are well recognized rules of construction which ought to control in the judicial interpretation of the statute. If we look to the object which the Legislature had in view in adopting this particular act, and if we bear in mind the familiar doctrine that the signification of the words used is to be gathered therefrom, and also from their association and collocation, there would seem to be but little, if any, difficulty in disposing of this contention. Now, the title of the original Act which forms the section of the Code referred to in the beginning of this opinion is 'An Act to provide for the payment of wages and salaries due employees of insolvent employers,' and the obvious scope of the enactment is, in the language of Bacon, J., in *Coffin* v. *Reynolds,* 37 N. Y. 640, when discussing a somewhat similar provision of a New York Statute, to 'protect the clases most appropriately described by the words used as those engaged in manual labor as dis-

tinguished from officers of the corporation or professional
men engaged in its service; in short to afford additional re-
lief to a class who usually labor for small compensation, to
whom the moderate pittance of their wages is an object of
interest and necessity, and who are poorly qualified to take
care of their own concerns or look sharply after their em-
ployer.' 'To the language of the Act must be applied the
rule common in the construction of statutes, that when two
or more words of analogous meaning are coupled together they
are understood to be used in their cognate sense, express the
same relations and give color and expression to each other.'
*Wakefield* v. *Fargo et al.,* 90 N. Y. 213. Or, as stated by
LORD BACON, 'the coupling of the words together shows they
are to be understood in the same sense. *Bac. Works,* Vol. 4, p.
26; see also, *Commonwealth* v. *DeJardin,* 126 Mass. 46. The
word 'employee,' though generally and ordinarily quite com-
prehensive, cannot, if regard be had to the principle just
stated, be given a wider meaning than the cognate words
'clerks' and 'servants' with which it is associated, but must
be restricted in its signification so as to include only persons
who perform the same kind of service that is due from clerks
or servants. 'A statute which treats of persons of an inferior
rank cannot by any general word be so extended as to em-
brace a superior; the class first mentioned is to be taken as
the most comprehensive; *specialia generalibus derogant.*
*Black Intro.,* sec. 3; *Sandiman* v. *Breach,* 7 B. & C. 96;
*Reg.* v. *Cleworth,* 4 Best & S. 927; *Kitchen* v. *Shaw,* 6 A.
& E. 729; *Branwell* v. *Pennock,* 7 B. & C. 536; *Williams*
v. *Golding,* L. R. 1, C. P. 69; *Broom's Max.* 625; *Smith*
v. *People,* 47 N. Y. 337, Allen, J., 90 N. Y., *supra.'* Now,
by no possible construction could an attorney at law be in-
cluded under the term 'clerk,' and it is not unreasonable to
suppose, looking to the subject-matter with which the Legis-
lature was dealing, and to the mischiefs it intended to rem-
edy, that the word 'servant' was used in the sense in which
it was employed in the common law. * * * Thus in *Gordon*
v. *Jennings,* L. R. 9 Q. B. D. 45, it was held under 33

and 34 Vict. Ch. 30, which prohibited the attachment of the wages of any servant, laborer or workman, that a *secretary* who was paid an annual salary in quarterly instalments was not included. And in *Aikin, Administrator,* v. *Wasson,* 24 N. Y. 482, it was decided that under section 10 of the General Railroad Act of 1850, which made stockholders liable for all debts due or owing to any of the company's laborers and servants for services performed for it, a contractor to build a part of the road was not embraced. In *Coffin* v. *Reynolds,* 37 N. Y. 640, a secretary was held not to be included under the terms laborers, servants and apprentices. In *Wakefield* v. *Fargo et al.,* 90 N. Y. 213, a bookkeeper and general manager was held not within the same words. In *People* v. *Remington,* 109 N. Y. 631, by affirming the lower Court it was held that a superintendent at an annual salary, an attorney at law and salesmen on salaries and commission are not entitled to preference under the statute. In *Tod* v. *Kentucky Union R. Co.,* 52 Fed. Rep. 241, contractors were held not to be employees."

In the *Casualty Insurance Company's Case, supra,* it was held that an insurance adjuster was not within the terms of the statute, the Court saying: "Now, it is clear, we think, that the word 'employee' as used in the statute was intended to have a *limited meaning,* and that it cannot be applied in its broadest sense, or as including every one in the service or employment of a corporation or individual. The object of the statute was to provide for the payment of the wages and salaries due a certain class of persons to whom such wages or salaries were deemed always necessary for their support and maintenance. The statute first provides for the payment of the wages and salaries of clerks, persons rendering mere clerical service, then, of servants or employees. The statute did not mean by employees persons rendering services of a higher degree than clerks. The duties of an adjuster being, as far as we are able to discover, of the character we have described, these officers, whilst in a general sense employees, cannot by any fair rule of construction be considered em

ployees in the limited and restricted meaning of that term as used in the statute.  To hold otherwise would result in the inclusion of a large class of persons in the service of a company or individual as preferred creditors, though they are obviously not within the scope, purpose and object of the Code, under which provision is made for a preference. * * * But the Act of 1888 (Art. 47, sec. 15 of the Code), was designed to create a preference in behalf of certain cred· itors in the distribution of an insolvent's assets, and to that extent it disturbs and destroys the equality amongst all the creditors, which equality it was the obvious, if not declared, policy of the insolvent system to promote and preserve."

In *Roberts* v. *Edie, supra,* the Court said: "It must be borne in mind that the predominent policy of the insolvent system is intended to secure an equality amongst creditors and to prohibit all preferences except such as are expressly permitted.  When, therefore, doubtful or ambiguous provisions of the enactments making up the system are to be construed, that interpretation which best comports with and gives effect to the ultimate and controlling purpose of the statute must be adopted and applied, rather than one which would totally or even partially defeat or thwart that design.  And this is but another way of saying that preferences which do not clearly and unequivocally appear to be authorized ought not to be created by mere construction, since the tendency of all preferences is to frustrate, to some extent, equality amongst creditors, and thus to disturb the very policy which lies at the root of all the insolvent laws."

Turning to the facts upon which the petitioner bases his claim for a preference, we find that he was employed under the terms of a contract embodied in the following letter written to him by Charles T. Leviness, Jr., the president of the company:

"Baltimore, Md., April 17, 1912.

"Mr. R. Frank Barr,

"Salisbury, Maryland.

"Dear Sir:—

"This letter is written in the form of a contract, embodying the stipulation of your appointment as manager for the Maryland Insurance Company, in charge of the Salisbury office, and the basis under which you are to work.

"It is agreed that you will draw a salary of one hundred and twenty-five dollars per month, payment to be made bi-monthly in the sum of sixty-two dollars and fifty cents, and that the period of this contract is one year from March 1st, 1912.

"It is also agreed that all of the expenses of the Salisbury office, including your traveling expenses, clerical hire, rent, postage, telephone service, etc., shall be borne by the Maryland Insurance Agency Company upon properly presented vouchers for same.

"As a further inducement toward your successful conduct of the company's business through your office, you will be allowed one-half of the net profits on all business credited after the expenses shall be deducted and after $750.00 of the commission earned shall be credited to the Maryland Insurance Agency Company through work from your Department. All business secured through your office, whether by you or anyone, will be credited to your account on the basis of the following schedule of commissions:

Ordinary Life ..........................55%
20 Payment Life........................45%
15 Payment Life........................30%
10 Payment Life........................20%
Complete Protection Ord. Life............40%
Complete Protection 20 Payment Life.....30%
20 Year Term...........................45%
10 Year Term...........................40%
15 Year Term...........................40%
20 Year Endowment.....................30%

25 Year Endowment.....................35%
30 Year Endowment.....................35%
15 Year Endowment.....................15%
10 Year Endowment.....................10%
Accident and Health Forms...............25%

"All other forms of insurance the regular commission received less 5% will be credited to your account.

"This business will include all agents of every description and your office will be given credit whether the same is written through you or sent in direct."

The territory over which the claimant had charge embraced the Eastern Shore of Maryland and a portion of the State of Delaware. Mr. Leviness, who was called as a witness for the claimant, testified that he was employed under the contract of April 17th, 1912, "to solicit insurance and take general charge of the company's office in all matters. That, of course, means looking after the business and attending to any of our business upon request of our office. * * * That statement in the contract that he is entitled to a certain commission if the business received from his territory amounted to so much, was a sort of a partnership agreement between the Agency Company and himself as to the excess."

He was the representative of the company in a large territory, and charged with duties and responsibilities quite different from those usually required from clerks, employees, or salesmen. His undoubtedly was that of a higher grade of service, involving the exercise of business judgment and executive ability in the discharge of the duties imposed by the contract. We must, therefore, hold that under the construction based upon the provisions of the law in the cases cited, the claimant is not within either of the classes designated in the statute, and is not a preferred creditor of the insolvent corporation.

As to the claim of J. William Strobel. His claim was for seventy-five dollars and was disallowed by the Court. It is based upon a contract which appears in the record called

"An Agent's Renewal Commission Contract." The contract recited that the company had the good-will and favorable influence of the leading bankers and business men in and around Baltimore, and that to extend the benefits and advantages of the company and to further increase its business, it agreed to create a Board of Advisory Agents, to be composed of well-known citizens, agents of the company, whose good-will and favorable influence shall be a considerable factor in furthering the interests of the company, and that in consideration of the continued influence, good-will and assistance in building up the business of the company of the holder of this certificate, the Maryland Insurance Agency Company agreed to the following articles:

> "Article 1. To compensate the person herein named for his services, the Company agrees to create from its premium income a commission each year during the succeeding thirty years, based on new business written, amounting to three and one-half per cent.

> "Article 2. The Company also agrees to create from its premium income a Renewal Commission each year during the succeeding thirty years amounting to three and one-half per cent. (3½%), based on the number of thousands of dollars of insurance which the Maryland Insurance Agency Company shall have in force in said State on the thirty-first day of December of each year."

It was provided by Article 5 of the contract that within sixty days from December 31, 1904, and annually thereafter during the period covered by the contract, the holder of this certificate "should each year be paid, subject to the provisions hereunder, such sum of money as shall be obtained by dividing an amount equal to three and one-half per cent. on each dollar of premium income on said business then remaining in force, by the total number of shares represented by the ten persistent members of said board, and then by multiplying the quotient thus obtained by the number of shares of

representation to which the holder thereof shall be entitled in each distribution of funds in which he shall participate; this payment being his compensation for his assistance in securing and retaining on the books of the company the insurance on which the amount of said fund is based."

By Article 6 it was provided as follows:

"This Agent's Renewal Commission Contract is issued and will remain in force upon the two following conditions, which are hereby agreed to by the holder hereof:

"1st. That the agent herein named shall annually furnish to the Company upon its request the names of ten people, residents of his State, whom he deems insurable.

"2nd. That he shall cause the Company to receive annually the regular premiums on an amount of insurance aggregating at least.............. thousand dollars."

Article 7 provided that should the agent herein named die or fail to comply with the two conditions stated in Article 6, then it may be construed that he had ceased to give the company the benefit of his influence, good-will and assistance required in the contract, as a consideration for which payments were to be made thereunder; and the company could then cancel the agreement and discontinue further payments to him under the contract.

On November 14, 1911, the president wrote to each holder of a contract, advising him of his failure to comply with its conditions, and further notifying him that if he failed to comply annually with said conditions, the contract would be cancelled, and future payments discontinued. The claimant admitted that he had not sent in any names in accordance with the requirements of section 6 for the last five years. He is, therefore, asserting a claim under a special contract, and at the same time admitting that he has not performed the obligations therein imposed upon him. There is no pre-

tense that he was prevented by the corporation from the performance of his part of the contract, and no evidence that any of its conditions were dispensed with. On the contrary, the letter of November 11th shows that the company was insisting upon the performance of these conditions.

In this situation, it is evident, apart from the question as to whether the letter worked a cancellation of the contract, that there was no relation of debtor and creditor existing between the claimant and the corporation. He must show either performance, or lawful excuse for not performing the contract, before he can recover, and he has shown neither. *Rumsey* v. *Livers,* 112 Md. 546; *American Towing Co.* v. *Baker,* 111 Md. 504; *Oldewurtel* v. *Bevan,* 117 Md. 645; *Townes* v. *Cheney,* 114 Md. 362.

It follows, from the views herein expresed, that the order appealed from in No. 83 must be reversed, and the order in No. 84 affirmed.

> *Order appealed from in No. 83—Clarence W. Perkins and Albert S. Gill, Receivers,* v. *R. Frank Barr—reversed, the appellee to pay the costs, and cause remanded.*
>
> *Order appealed from in No. 84—J. William Strobel* v. *Clarence W. Perkins and Albert S. Gill, Receivers—affirmed, the appellant to pay the costs, and cause remanded.*