GEORGE H. RICHARDSON et al., Appellants, *v.* HORACE K. THURBER, as Assignee, etc., Respondent.

Under the provision of the act in relation to assignments for the benefit of creditors (§ 29, chap. 466, Laws of 1877, as amended by chap, 328, Laws of 1884), which provides that in all assignments made pursuant to the act, the wages or salaries due to employes shall be preferred before any other debt, the instrument of assignment itself is not

rendered void by the omission to insert therein a clause giving such preference, the instrument is to be read in connection with the statute, as if the said provision formed part of it; and so, the statutory preference is impressed upon the trust fund in the hands of the assignee.

A statute imposing such a preference upon a voluntary assignment is not unconstitutional; the legislature may permit it to be made only on expressed conditions, and the assignor, by the act of making the assignment, accepts the conditions.

(Argued February 11, 1887; decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made March 5, 1886, which affirmed a judgment in favor of defendant, entered upon an order sustaining demurrer to plaintiffs' complaint.

The complaint alleged in substance the recovery of judgment in favor of plaintiffs against defendants, Herron and Spencer, and the return of execution thereon unsatisfied; that after the contraction of the debt upon which the judgment was rendered the debtors made an assignment for the benefit of creditors, and that defendant, Thurber, was by order of the court substituted as assignee in place of those named in the assignment. That the assignors were at the time of the assignment indebted to various employes for wages and salaries which were not preferred in the assignment. On which account the instrument was alleged to be fraudulent and void.

The defendants demurred on the gronnd that the complaint did not state a cause of action.

*James L. Bishop* for appellants. The act of 1884 requires an assignor when he owes wages, to prefer them by a direction to that effect in the instrument of assignment. (Laws of 1884, chap. 328, amending § 29 of chap. 466, Laws of 1877; *Roberts* v. *Tobias*, MSS. VAN BRUNT, J.; *Smith* v. *Hartwell*, MSS. INGRAHAM, J.; *Spaulding* v. *Jerome*, MSS. DANIELS, J.; *Robbins* v. *Omnibus R. R. Co.*, 32 Cal. 472; *Abbotsford*, 98 U. S. 440; *In re Lewis*, 81 N. Y. 421; *Thrasher* v. *Bentley*, 1 Abb. N. C. 39, 44; *People* v. *Albert-*

*son*, 55 N. Y. 50; *Benton* v. *Wickwire*, 54 id. 226; *Johnson* v. *H. R. R. Co.*, 49 id. 455; Sedgw. on Con. of Stat. [2d ed.] 205; *People* v. *Supervisors*, 17 N. Y. 235, 241; *Supervisors* v. *Brogden*, 112 U. S. 261, 268; *United States* v. *Benecke*, 98 U. S. 447; *N. Y. etc. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Farmers' Bk.* v. *Hale*, 59 id. 53.) The act of 1884 is not an insolvent law and it does not convert the general assignment act of 1877 into an insolvent law. (*Burley* v. *Hartson*, 40 Hun, 121; *Thrasher* v. *Bentley*, 1 Abb. [N. C.], 39, 44; *In re Lewis*, 81 N. Y. 421, 424; *People* v. *Chalmers*, 1 Hun, 683, 686; aff'd, 60 N. Y. 154; *Boese* v. *King*, 78. id. 471; *In re Rider*, 23 Hun, 91; *In re Radke*, 10 Daly, 119; *Chapin* v. *Thompson*, 89 id. 270, 279; *In re Davis*, 1 How. Pr. [N. S.] 79, 85.) A general assignment being a private trust, based on contract, the legislature has no constitutional power to give it effect in violation of the express intention of the parties. (*Westervelt* v. *Gregg*, 2 Kern. 202, 212; *Wynehamer* v. *People*, 3 id. 395, 434; *Wilkinson* v. *Leland*, 2 Pet. 657; *Powers* v. *Bergen*, 6 N. Y. 358, 367; *Taylor* v. *Porter*, 4 Hill, 140, 147; *In re Albany St.*, 11 Wend. 148; *In re John & Cherry Sts.*, 19 id. 659; *Varrick* v. *Smith*, 5 Paige, 137; *Cochrane* v. *Van Sarley*, 20 Wend. 365; *Embury* v. *Connor*, 3 N. Y. 511; *In re Jacobs*, 98 id. 98; *Stuart* v. *Palmer*, 74 id. 188, 195; *Railroad Tax Cases*, 13 Fed. Rep. 752.) The statute did not become part of the assignment so as to alter the conceded intent of the parties as expressed in the instrument. (2 Pars. on Cont., 675; 2 Chitty on Cont. [11th ed.] 111.) The provisions of the statutes of the United States, conferring a priority of payments upon the United States in cases of insolvency, being the exercise of a sovereign power, are not analogous to the provisions of the act of 1884. (U. S. Const., art 1, § 8, subd. 18; *U. S.* v. *Fisher*, 2 Cranch, 388, 401; *U. S.* v. *State Bk. of N. C.*, 6 Pet. 35; *Livingston* v. *Moore*, Baldwin, 424, 429.) The statute does not create a lien in favor of debts due for wages. (*U. S.* v. *Fisher*, 2 Cranch, 358; *Conrad* v. *Atl. Ins. Co.*, 1 Pets. 440, *Brent*

v. *Bk. of Washington,* 11 id. 596, 611.) The assignment, not having been made as required by the statute, is void. (*Roberts* v. *Tobias,* VAN BRUNT, J., MSS. ; *Hardman* v. *Bowen,* 39 N. Y. 196 ; *Britton* v. *Lorenz,* 45 id. 51 ; *Montford* v. *Montford,* 24 Hun, 120 ; *Rennie* v. *Bean,* id. 123.) The assignment being void, any judgment creditor may maintain an action to have it so declared. (*Andrews* v. *Roberts,* 18 Johns. 528 : Wait on Fraud. Convey. § 413 ; Code, §§ 1872, 1873.)

*E. More* for respondent. In all assignments made in pursuance of the act of 1884 (Chap. 328), wages are preferred whether named in the assignment or not. (*Burley* v. *Hartson,* 40 Hun, 121.) If the statute requires the preference to be expressed, it is well settled that only those so entitled to the preference can raise the point. (Bishop on Assign., § 239 ; *Fox* v. *Heath,* 16 Abb. 163 ; *Morrison* v. *Atwell,* 9 Bos. 503 ; *Scott* v. *Guthrie,* 10 id. 408 ; *Powers* v. *Graydon,* id. 630 ; *Haynes* v. *Brooks & Brown,* Daily Reg., Sept. 21, 1885; *Chamberlain* v. *Dempsey,* 36 N. Y. 148 ; *Bullard* v. *Raynor,* 30 id. 206.) Courts will disregard the plain reading of a statute, and give effect to its purpose and intent. (*N. Y. & H. R. R. R. Co.* v. *Schuyler,* 34 N. Y. 80 ; *Mech. Bk.* v. *N. Y. C. & H. R. R. R. Co.,* 13 id. 621 ; *Johnson* v. *Underhill,* 52 id. 203.)

FINCH, J. The question involved in this controversy is, in some respects, so close and evenly balanced as to have produced conflicting opinions in the Supreme Court and drifted very able judges into disagreement. Either view of the problem seems open to some just criticism on the part of its adversaries, and the principal merit of our judgment upon the question will be that it is final, and settles the rule to be observed.

In 1884 the general statute regulating assignments by insolvent debtors was amended so as to provide that " in all assignments made in pursuance of this act the wages or salaries actually owing to the employes of the assignor or assignors

at the time of the execution of the assignment shall be preferred before any other debt, and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred pursuant to this section they shall be applied to the payment of the same, *pro rata* to the amount of each such claim." Subsequent to that amendment a firm of insolvent debtors made and executed a voluntary assignment to the defendant, regular and in accordance with the general statute in all respects, except that it contained no preference for wages owing to employes. The plaintiffs recovered judgment against the assignors, issued execution thereon to the sheriff, and then commenced the present action in equity to set aside the transfer as fraudulent and void and an illegal obstruction to the collection of their debt, founding their sole objection upon the omission in the instrument itself to provide a preference for wages. Passing by the obvious incongruity, acted upon by the Special Term, of a creditor appealing to a court of equity for its aid against a fraud, which is only such because it benefits the creditor to the harm of others not before the court, we come at once to the real question of the true construction and meaning of the statute.

Briefly stated, the conflicting views revolve about the inquiry whether the enactment was intended to force into every assignment, as the contract and mandate of the assignor, a clause giving the desired preference, or to effect the result by its own statutory force, operating in every case as a condition added by the law, and effective even if unexpressed in the instrument. The argument of the appellants stands most strongly upon what is claimed to be the literal language of the statute, and insists that the legislature has spoken in plain and unambiguous language, and the courts must obey. We are not convinced that the language employed is free from ambiguity. The word "assignment" may sometimes have reference to the instrument which effects the transfer, and sometimes to the transfer itself, considered as a legal effect or result. A grant of land may sometimes refer to the deed or conveyance, and sometimes to the passage of the title and

its vesting in the grantee. In such cases the context or the apparent meaning determine the sense in which the word is used. It is said of the statute before us that the word "assignment" is invariably used as referring to the instrument of transfer. To some extent that is true, but true because the manner of its use or the context disclose that intended meaning. When it is said in the act of 1877 that the assignment shall be acknowledged and recorded, there is no difficulty in understanding the necessary reference to the instrument. But when it is said that every "assignment" shall be in writing, it is equally plain that the assignment means the legal transfer to be effected only by an instrument in writing. And when again it is said that on an accounting the county judge shall have power to examine the parties and witnesses on oath "in relation to the assignment," we know from the character of the provision and what follows that the word "assignment" does not mean the mere written instrument, but is used in the broader sense of the transfer and trust which the written instrument makes effectual. So, in the section under consideration, we are to ascertain in which sense the word was used. The language is "in all assignments made in pursuance of this act." That may mean in all written instruments of assignment, or in all cases of a general assignment. The section adds that the wages "shall *be* preferred," without saying by the assignor or assignors, and declares that when the assets shall be insufficient to pay in full "all the claims preferred pursuant to this section" a *pro rata* payment shall be made. Here it is not directed that the assignor shall so provide, but that the assets "shall be applied" to such payment. It seems to dictate not what the assignor shall require, but what the assignee shall do, and speaks of the "claims preferred pursuant to this section," instead of the claims for wages preferred by the instrument of assignment. These considerations incline our opinions toward the construction of the respondent, and they are strengthened by reflection upon the purpose of the provision and the consequences of a different view. The object

was the protection of employes. That purpose in the present case may be defeated if we are simply to declare the assignment void. Suppose, too, as the General Term suggests, that an assignment is made without any preferences, but gives up the whole estate to creditors equally. " Equality is equity," but does it become fraudulent because a preference is not given, or rather is not the statutory preference impressed upon the trust fund in the hands of the trustee ?

We are warned, however, that this construction may lead to unconstitutional results. It is argued that an assignment is a private contract creating a private trust fund and the assignee derives all his powers from the instrument; that where the assignor does not prefer employes, if the statute does it, and compels the assignee to pay, the legislature stands in the attitude of appropriating the assignor's property against his will and in violation of his expressed intentions. But the difficulty is imaginary. No one doubts the power of the legislature to regulate and control general assignments for the benefit of creditors. It may permit them to be made as it has already done, only upon expressed conditions, and when it does so, he who makes an assignment by the act accepts and consents to the conditions. Availing himself of the permission he cannot be supposed also to repudiate its terms. That answer frees the Federal law from the accusation of confiscating the property of a debtor against his will. That law gives to the United States priority of payment, even in case of a voluntary assignment and it seems to be conceded that such priority is wholly irrespective of the terms of the assignment. The learned counsel for the appellants points out distinctions peculiar to the Federal law and to governmental functions. There is great force in his suggestions, and yet the illustration shows that a statutory preference, super-imposed upon a voluntary assignment, is not a novelty, or incapable of enforcement, or necessarily inconsistent with the rights of the citizen.

If we read this assignment in connection with the statute, and as if that formed part of it, we reach the one result

which the statute sought to accomplish, and with much less of interference with the purpose and intent of the assignor than would follow from the utter destruction of his assignment. Without pursuing the subject further we conclude, though not without some hesitation, that the construction of the General Term in this case is correct.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.