## In re CALDWELL.

### (District Court, E. D. Arkansas, W. D. October 17, 1908.)

#### No. 956.

BANKRUPTCY (§ 348*)—DEBTS ENTITLED TO PRIORITY—WAGES OF "SERVANT."

Musicians, employed at regular wages to play in a theater or other place, are "servants," within the meaning of Bankr. Act July 1, 1898, c. 541, § 64b (4) 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), and entitled to priority of payment from the estate of the employer in bankruptcy for their wages earned within three months.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 348.*

For other definitions, see Words and Phrases, vol. 7, pp. 6422–6429; vol. 8, p. 7798.]

In Bankruptcy.

Downie, Rouse & Streepey, for petitioners.
J. A. Comer, for trustee.

TRIEBER, District Judge. The only question involved in this proceeding is whether the petitioners, to whom wages are due for services rendered within three months of the institution of the bankruptcy proceedings as musicians, hired by the bankrupt to play on his roof garden, are entitled to priority under section 64, cl. 4b, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]). To decide this question requires the determination of the meaning of the word "servant" in that section, for it is conceded that the petitioners are neither workmen, clerks, nor salesmen.

While lexicographers define the word differently, the Century Dictionary defining it as "one who exerts himself or labors for the benefit of a party or employer; an attendant; a subordinate assistant"—the courts have not considered themselves bound by the definitions found in dictionaries, but have construed the word so as to carry into effect the intent of the lawmakers. In Cawood v. Wolfley, 56 Kan. 281, 43 Pac. 236, 31 L. R. A. 538, 54 Am. St. Rep. 590, the court was called upon to construe the words "wages of servants," in a statute regulat-

ing the classification and priorities of demands against estates of deceased persons—i. e., whether, as in the case at bar, a clerk in a store was a servant, entitled to priority of payment—and it was held that such a person was a "servant," within the meaning of the statute. The court in its opinion said:

"The Legislature by the enactment has manifested a purpose to secure all wage earners their hire, and to prefer their claims to any other creditors. It is conceded that the term 'servant' in its usual application, especially in the law, is broad enough to include a clerk; but it is argued that the word is here used in a restricted sense, and means only menial or household servants. We are loath to recognize any such classification as 'menial servants.' The word is broad enough to include a clerk, and we think the Legislature intended to do so."

In Frank & Dugan v. Herold, 63 N. J. Eq. 445, 52 Atl. 155, it was held that skilled operators employed in a manufacturing establishment are "servants." The Vice Chancellor, in his opinion, said:

"Now, I say that the relation of master and servant existed between plaintiff and these operators. I do not use the word 'servant'.in any menial sense. Any person who works for another for a salary is a servant in the eye of the law; and .in the law the relation of master and servant does .not necessarily include anything menial or degrading."

A definition of the word, which is very comprehensive and meets my views as to its legal meaning, is that given in 20 A. & E. Enc. of Law (2d Ed.) 11:

"A servant is one who is employed to render personal services to his employer. otherwise than in the pursuit of an independent calling, and in any such service remains entirely under the control and direction of the latter."

And on page 12, where it is said:

"The relation of master and servant exists where the employer has the right to select the employé, the power to remove or discharge him, or the right to direct both what work shall be done and the way and manner in which it shall be done."

The bankruptcy act, while primarily intended to secure an equal distribution of the assets of the bankrupt among his creditors, evinces a strong intent on the part of Congress to protect those who are dependent on their daily earnings for their support, and gives them a preference over ordinary creditors, limiting it to three months' wages. As to the limitation of three months, it was no doubt influenced by the fact that persons who permitted their wages to accumulate for a longer period of time are not in as needy condition as the ordinary wage earner. The act as originally passed included only "workmen, clerks and servants." When Congress found that some of the courts, giving that provision of the act a strict construction, had held that a traveling salesman was not within the classes mentioned (In re Scanlan [D. C.] 97 Fed. 26; In re Greenewald [D. C.] 99 Fed. 705; In re Mayer [D. C.] 101 Fed. 227), it amended the act so as to avoid that construction by adding the words "traveling or city salesmen." Act June 15, 1906, c. 3333, 34 Stat. 267 (U. S. Comp. St. Supp. 1907, p. 1033).

It is true that Congress might have added the word "wage earner," and thus removed all doubt; but it was probably thought that the word "servant," in view of the construction given to the word by the

courts generally, was sufficiently broad to include all persons working for the benefit of a master or employer and dependent upon wages for their support. Employés of carriers, mills, and other establishments are always designated as servants, and the employers as masters. A musician, employed by the day, week, or month at regular wages, while not a "menial servant" in any sense of the word, is still one who labors for the benefit of an employer. He is not in pursuit of an independent calling, and is subject to his master's commands, and must do as directed. The fact that his work is that of an artist does not deprive him of the benefit which the law intended to give to those working for wages for their living. An artist of the highest class might be employed to do some fresco painting at daily wages. Should the fact that he is an artist deprive him of any rights under that provision of the bankruptcy act, although his work is performed as a hired employé?

I do not think the intent of Congress was so narrow, but rather that it took the broad view that every laborer, clerk, servant, or employé working for wages for the benefit of a master or employer, when such wages furnish the means of his livelihood, and where the relationship of master and servant exists within the well-known meaning of the law, shall have priority over ordinary creditors for the sum due him for such services, not to exceed three months' wages. Any other construction would do a great injustice to a large class of wage earners, to whom their daily earnings are absolutely necessary for their support and that of their families—an injustice which I am not inclined to assume Congress intended to inflict on them. The priorities provided for by the bankruptcy act are remedial, and should be liberally rather than strictly construed. As has been well said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. * * * The reason of the law in such cases should prevail over its letter." United States v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278; Holy Trinity Church v. United States, 143 U. S. 457, 461, 12 Sup. Ct. 511, 36 L. Ed. 226; Lau Ow Bew v. United States, 144 U. S. 59, 12 Sup. Ct. 517, 36 L. Ed. 340.

Applying these rules, I am of the opinion that musicians, employed at regular wages to play in a theater or any other place, are "servants," within the meaning of section 64, cl. 4b, of the bankruptcy act, and petitioners are entitled to priority of payment.