## MANLY v. HOOD.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1930.

No. 2899.

McDowell, District Judge, dissenting.

G. W. S. Musgrave, of Baltimore, Md. (J. Purdon Wright and J. Clarke Murphy, both of Baltimore, Md., on the brief), for appellant.

G. C. A. Anderson, of Baltimore, Md. (Keech, Deming & Carman, of Baltimore, Md., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge. ▮ The Reliable Furniture Manufacturing Company was placed in the hands of receivers in insolvency by the circuit court of Baltimore City, Md., on the 6th day of February, 1928. Robert Hood and other wage-earners employed by the company filed their claims for wages earned within three months of the receivership; and same were allowed as preferred claims, pursuant to article 47, section 15, of the Public General Laws of Maryland. On May 19, 1928, proceedings in bankruptcy were instituted and the administration of the assets of the insolvent corporation was taken over by the bankruptcy court. The wage claimants filed as preferred claims in bankruptcy their claims for wages earned three months prior to the receivership proceedings, and same were allowed as preferred claims by the court. The trustee in bankruptcy has appealed, bringing up the case of the claimant Hood as a test case.

We agree with the court below that claimant is entitled to a preferred claim under the express provision of section 64, paragraph b, clause 5 of the Bankruptcy Act as amended by the act of May 27, 1926 (11 USCA § 104), which provides: "(b) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (5) wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant."

It is said that this section does not apply to the claim involved here because the wages were not earned within the three months prior to the commencement of the proceedings in bankruptcy, this argument being based upon the fact that the petition in bankruptcy was not filed until May 19th, and that section 1, clause (10), of the Bankruptcy Act (11 USCA § 1(10) provides that "'date of bankruptcy,' or 'time of bankruptcy,' or 'commencement of proceedings,' or 'bankruptcy,' with reference to time, shall mean the date when the petition was filed." We think, however, that this argument ignores the introductory portion of the section in which these words are found and which provides that they shall be given such meaning "unless the same be inconsistent with the context." We think that to construe clause (5) of section 64(b) as requiring that wages, to come within its protection, shall have been earned within three months of the filing of the petition in bankruptcy, as distinguished from the time when the property of the bankrupt is taken from his control, either under bankruptcy proceedings or insolvency proceedings resulting in bankruptcy, is inconsistent with the context of the act and is clearly repugnant to its reason and spirit.

There can be no question that it was the purpose and intent of Congress, by the provision in question, to protect the wages of laborers due them by insolvents whose assets had been taken over by the courts under the act. The laborer is generally dependent upon his wages for livelihood and the support of his family, and he has little means of judging of the solvency of his employer. Every consideration of morality, as well as of public policy, demands, there-

fore, that his wages be preserved to him and be given priority over ordinary commercial claims. This the act was intended to do, and it is clear that so far as the accomplishment of this purpose is concerned, it could make no possible difference whether the wages were earned immediately prior to the bankruptcy proceeding proper, or immediately prior to a state insolvency proceeding resulting in bankruptcy. It was realized that limitation must be placed upon the priority given, to conform same to the purpose for which it was intended and avoid frauds; and the priority was accordingly limited to $600 and to wages earned within three months prior to "the commencement of the proceeding." But it could not have been intended by this limitation to deny priority to wage claims merely because insolvency under state laws had preceded bankruptcy. There is the same reason for allowing priority in the one case as in the other. Not only has the wage-earner the same equity, but he is prevented from collecting his wages by the same sort of circumstance, viz., the fact that the business of his employer is taken in custody by the law. It is true that it is taken in custody by the state law in case of an insolvency proceeding; but where such proceeding is followed by bankruptcy, the administration in the bankruptcy court, so far at least as the wage claimant is concerned, is but a continuation of that proceeding.

Congress knew that cases would frequently arise where bankruptcy would follow insolvency proceedings; for the appointment of a receiver, while insolvent, was expressly made an act of bankruptcy. Bankruptcy Act, § 3a (4), as amended by Act of 1926, § 3a (5), 11 USCA § 21(a)(5). It knew, also, that considerable time might elapse between the commencement of insolvency proceedings and the filing of the petition in bankruptcy; for the act [11 USCA § 21(b)] provided that a petition might be filed at any time within four months of the commission of an act of bankruptcy. It must have been contemplated, therefore, that cases would arise where the three months preceding the filing of the petition would include, as here, only time during which the property of the bankrupt had been in the possession of receivers of the state court. It is unreasonable to think that in such case Congress could have intended to deny priority to wage claimants, who had been delayed in the collection of their claims by the insolvency proceedings. Considering the reason and spirit of the act and the purpose and intent of the provision here under consideration, we think it clear that "the commencement of the proceeding" must be construed as embracing the commencement of proceedings in insolvency resulting in bankruptcy, under which the property of the bankrupt has been surrendered or taken from him by the law and withdrawn from the reach of creditors, as well as the commencement of bankruptcy proceedings proper. It is well settled that provisions of the Bankruptcy Act giving priority to claims for wages due employees are to be liberally construed. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 160, 32 S. Ct. 457, 56 L. Ed. 706; In re McDavid Lumber Company (D. C.) 190 F. 97; In re Caldwell (D. C.) 164 F. 515; In re Erie Lumber Co. (D. C.) 150 F. 817; In re Rouse (D. C.) 91 F. 514; Ex parte Rockett, Fed. Cas. No. 11,977.

But, even if clause 5 of paragraph b of section 64 of the act were not applicable, we think that the rights of the wage-earners here would be protected by clause 7 of the same paragraph (11 USCA § 104(b)(7), which gives priority to "debts owing to any person who by the laws of the States or the United States is entitled to priority." Wage-earners, by Maryland statute, are given priority for wages earned three months prior to adjudication of insolvency or appointment of receiver, the statute providing that they "shall first be paid in full out of such property or estate * * * and shall be preferred to all claims against the property and estate of such insolvent person or body corporate." Bagby's Annotated Code of Maryland, art. 47, § 15; Hess v. Jewell, 85 Md. 235, 36 A. 758; Roberts v. Edie, 85 Md. 181, 36 A. 820; Perkins v. Barr, 126 Md. 94, 94 A. 533. It is well settled that such a statute gives wage claimants a priority which will be enforced by courts of bankruptcy under clause 7 above quoted. The priority which it gives is a lien, in the broad sense of that term, upon the assets of the insolvent estate, which is not dissolved by subsequent bankruptcy. In re Laird (C. C. A. 6th) 109 F. 550, 553 (opinion by Judge Day); In re Bennett (C. C. A. 6th) 153 F. 673, 674 (opinion by Judge Lurton); Henderson v. Mayer, 225 U. S. 631, 637, 32 S. Ct. 699, 56 L. Ed. 1233; Globe Bank & Trust Co. v. Martin, 236 U. S. 288, 301, 35 S. Ct. 377, 59 L. Ed. 583; Marshall v. New York, 254 U. S. 380, 386, 41 S. Ct. 143, 65 L. Ed. 315; In re Western Condensed Milk Co. (C. C. A. 9th) 261 F. 62. The

principle upon which this preference is recognized and enforced is well stated by Judge Lurton in the Bennett Case, supra, as follows: "It is not a question as to whether the bankrupt law is a law superior within its field to a state law in the same field, but a question whether a priority given is preserved by the bankrupt law. This is answered by section 64b (5) [now (7)] of the bankrupt act [11 USCA § 104(b) (7)]. That provides that 'debts owing to any person who by the laws of the state or of the United States is entitled to priority' shall be entitled to priority in the distribution of a bankrupt's general estate. * * * It is idle to consider whether a state law can of its own force determine priorities under a national bankrupt law. No such contention is made or could be sustained. But it is another thing when the national bankrupt law prescribes that effect shall be given to state laws which do give priority to certain debts."

It has been held in a few cases that Congress, having legislated specifically with regard to wage claims in clause 5 of the section, did not intend that the same matter should be covered by the general provisions of clause 7. See In re Rouse, Hazard & Co. (C. C. A. 7th) 91 F. 96; In re Slomka (C. C. A. 2nd) 122 F. 630. We do not think, however, that the rule of statutory construction invoked by these cases applies, for the reason that the priority given under clause 7 arises not by virtue of general language of the act, upon which clause 5 could properly be held to be a limitation, but by virtue of specific provisions of state laws which are recognized and enforced under clause 7. As said by Judge Lurton in the Bennett Case, supra: "Congress might have dictated a single and uniform rule of distribution. If it had, that would have been the absolute law, notwithstanding state laws prescribing a different rule. But Congress has elected to prescribe as one rule of distribution that debts entitled to priority under any state law or law of the United States shall be accorded a like priority in the distribution of a bankrupt's estate. The law which we administer is thus the national bankrupt law; that is, the preference in bankruptcy, thus accorded, is a preference prescribed by the bankrupt law which for this purpose adopts the law of the state as the applicable federal law. This is the view which has been taken by many careful judges and accords with our own view."

Congress was solicitous of the rights of wage claimants. Within certain limitations it gave them priority over taxes and over other debts having priority under the laws of the states. But subject to this priority, debts having priority under the laws of the states are given priority by reason of the provisions of clause 7. Where a wage claim is covered by clause 5, it takes priority under that section on the principle that the greater includes the less. But when not covered by that section, it is not stricken down by it, but, if given priority by state laws, takes its status under clause 7 along with other claims having such priority.

If the interpretation for which the trustee contends is to prevail, the laborer in cases such as this is caught between the upper and nether millstones of the state and federal laws. Although given priority by the state, he cannot enforce it, because the state insolvency proceedings were followed by bankruptcy. Although given priority by the Bankruptcy Law, he cannot enforce it, because the bankruptcy followed insolvency proceedings. And thus, although the favorite of both the state and federal laws and given priority by both, he is to be denied priority under either simply because the courts of both jurisdictions have had a hand in the administration of the insolvent estate. We need not multiply words to prove that Congress intended no such absurdity. As was said by Judge Simonton, speaking for this court in Botts v. Hammond, 99 F. 916, at page 920: "The national bankruptcy act is remedial, and should be interpreted reasonably and according to the fair import of its terms, with a view to effect its objects and to promote justice."

We think that the learned District Judge was correct in holding that claimant is entitled to priority, and the order to that effect is accordingly affirmed.

Affirmed.

McDOWELL, District Judge, dissents.