## STROM v. PEIKES.

### In re CORSON FURNITURE CO., Inc.

### No. 78.

Circuit Court of Appeals, Second Circuit.

Nov. 24, 1941.

**1004**

Murray R. Paris, of New York City, for appellant.

Leo A. Greenbaum, of New York City (Irving I. Schreckinger, of New York City, on the brief), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The appeal in this case raises principally the question of the effect which a bankruptcy court should give to a state statute allowing a priority to wage earners. The court below relied, however, solely on the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., for granting a wage priority, and consequently that issue must be considered.

The facts are undisputed. The claimant, Gertrude Strom, was employed by the bankrupt corporation at a salary of $25 per week. She ceased work on June 8, 1940, at which time $287 was owing to her. On July 5, 1940, the corporation made an assignment for the benefit of creditors to Abraham N. Peikes as assignee. On September 6, 1940, an involuntary petition in bankruptcy was filed against the corporation, and thereafter Peikes was elected bankruptcy trustee. If September 6, 1940, is chosen as the vital date for determining Strom's priority as a wage earner under § 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), she will receive approximately $10, and the remaining $285 will become an unsecured claim. If July 5, 1940, is chosen, under either of the two theories discussed below, she will receive a priority of $150, and the remaining $137 will be an unsecured claim.

The referee took the first position indicated and found against the claimant; but on petition for review, the district court reversed and held for the claimant under § 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), by construing it to permit July 5, 1940, to be taken as the effective date. With this we cannot agree. Section 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), states that wages which shall have priority are those "earned within three months before the date of the commencement of the proceeding." And § 1(13), 11 U.S.C.A. § 1(13), provides that commencement of proceedings, "with reference to time, shall mean the date when the petition was filed." This seems clearly to require September 6, 1940, the date of the petition, to be taken as the date for computing the three months' period.

Reliance is placed, however, on Manly v. Hood, 4 Cir., 37 F.2d 212, 213, where the court declined so to interpret § 64, sub. a(2), then § 64, sub. b(5). The argument was that § 1 had a qualification limiting definitions if "the same be inconsistent with the context." Because of the policy of the act in favoring wage earners, and because logically the three months should be dated from any insolvency proceeding, receivership, or assignment, the court felt that it had a case of inconsistency with the context. Granting the strong arguments of equity and liberality toward wage earners, nevertheless it seems difficult to say that the words "commencement of the proceeding" are inconsistent with the con-

text of § 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), if they mean "date when the petition was filed." At most they are inconsistent with a broad purpose of § 64, sub. a(2). But even this is not controlling, for they are consistent with the entire context of § 64 and the Bankruptcy Act as a whole. As a general proposition, the priority section establishes a hierarchy of payment from the bankruptcy estate. To inject a date prior to bankruptcy is to confuse the bankruptcy estate with an earlier estate, such as that in the hands of an assignee. Displacement of a state insolvency proceeding by a bankruptcy proceeding has as part of its purpose the substitution of the bankruptcy rules of distribution. Holding these views, and with all deference, we are constrained to disagree with Manly v. Hood, supra.

■ The only other reasoning by which claimant can rely on July 5, 1940, as the date for computing her wage claim is by resort to § 67, sub. b, 11 U.S.C.A. § 107, sub. b, a new provision added in 1938. This provides that "statutory liens in favor of employees, * * * created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though [otherwise avoidable]." Claimant asserts that she comes within this provision by virtue of § 22 of the New York Debtor and Creditor Law, Consol.Laws, c. 12. That section reads in part: "In all distribution of assets under all assignments made in pursuance of this article, the wages or salaries actually owing to the employees of the assignor * * * for services rendered within three months prior to the execution of the assignment * * * shall be preferred before any other debt."

There are several reasons for not accepting the claimant's argument. In the first place, § 67, sub. b, 11 U.S.C.A. § 107, sub. b, is obviously enacted for the limited purpose of enabling wage earners' and mechanics' and other liens to be perfected within four months of bankruptcy without running the risk of a voidable preference under § 60, sub. b, 11 U.S.C.A. § 96, sub. b. It is thus doubtful that we should apply § 67, sub. b, to a novel situation not at all related to the problem of perfecting a lien. But more important is the distinction to be drawn between statutes creating priority of distribution and statutes providing security for a creditor by awarding him a lien. See In re Brannon,

5 Cir., 62 F.2d 959, certiorari denied, Ryan v. City of Dallas, 289 U.S. 742, 53 S. Ct. 692, 77 L.Ed. 1489; 3 Moore's Collier on Bankruptcy, 14th Ed., 1941, 2084. Statutes of priority of distribution are not affected by § 67, sub. b; their effect would depend on such a section as § 64, sub. a(5), 11 U.S.C.A. § 104, sub. a(5), which provides for priority of "debts owing to any person, including the United States, who by the laws of the United States [is] entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law." Obviously claimant cannot rely on § 64, sub. a(5), formerly § 64, sub. b(7), though prior to the amendment of the act in 1938 she might have, because then the section read "who by the laws of the States or the United States," etc. Compare In re Bennett, 6 Cir., 153 F. 673, and Manly v. Hood, supra, with In re Slomka, 2 Cir., 122 F. 630, and In re Rouse, Hazard & Co., 7 Cir., 91 F. 96. If § 22 of the New York Debtor and Creditor Law means what it seems to say, it is a statute providing for priority in distribution. It does not appear to create a lien.

Claimant seeks to avoid this result by reference to Richardson v. Herron, 39 Hun, N.Y., 537, 542 (affirmed in Richardson v. Thurber, 104 N.Y. 606, 11 N.E. 133, referred to below), where an Appellate Term said that § 22 "attaches to the assets a statutory lien." Apart from the question whether or not saying so makes it so, this one statement is of little weight. For one thing, a contemporary case from another department said it "does not give a lien." Burley v. Hartson, 40 Hun, N.Y., 121 (affirmed 109 N.Y. 656, 16 N.E. 684). See, also, Johnston v. Kelly, 43 Hun, N. Y., 379, which does not characterize § 22 as creating or giving anything. All of these cases were concerned with the question whether or not an assignment was void if by its terms it did not provide for a priority for wages. Calling it a lien or not had reference only to this question. And when the Court of Appeals came to affirm Richardson v. Herron, supra, and settle the issue of the validity of assignments, it called the fund a "trust" in favor of the wage earner. Richardson v. Thurber, supra. So in Kupshire Coats, Inc., v. United States, 272 N.Y. 221, 5 N.E.2d 715, the court talked of § 22 as creating only priority of payment. Consequently it hardly seems justified to ac-

cept one passing remark as a determination that § 22 creates a lien.

It may be objected that an analysis which attaches to the word "lien" the requirement that a specific piece of property be involved is too formalistic and that actually there is no difference before a bankruptcy court between a statutory lien and a statutory priority, since they both provide for priority in participation of assets. Whatever force there might be in this argument is lost when §§ 64 and 67 are considered in the light of statutory changes. Section 67, sub. c, clearly indicates that the preservation of liens under § 67, sub. b, covers only liens in the traditional sense of rights attaching to specific property. Subsection c begins, "Where not enforced by sale." Obviously, a right to priority of distribution is not ordinarily enforced by sale. Furthermore, it is quite clear that the very sort of claim made in this estate was aimed at by the elimination of state laws as a means of obtaining priority under § 64, sub. a(5). See 3 Moore's Collier on Bankruptcy, 14th Ed., 1941, 2052, 2085, 2174; H.R.Rep. No. 1409 on H.R. 8046, 75th Cong., 1st Sess., 1937, 15-16. We should not open a door once closed by broadening the definition of a "lien" beyond what § 67 is meant to cover. In fact, if we accepted the argument, a wage claimant formerly coming in under the last priority under § 64 would now come in far up the list by virtue of a preferred status under § 67. Even granting the desirability of protecting a wage earner caught by the adventitious passage of time, as the claimant here is, it is too great a step to expand § 67 to let her in. The referee's order was therefore correct.

Reversed.