**In re HUYLER'S.**

United States District Court
S. D. New York.

Sept. 22, 1952.

---

320

Bernard Bayer, New York City, for the debtor.

Simpson, Thacher & Bartlett, New York City, for offerors.

Charles Seligson, New York City, for holders of receiver's certificates.

Carb, Reichman & Luria, New York City, for Metropolitan Life Ins. Co.

Rosenman, Goldmark, Colin & Kaye, New York City, Godfrey Goldmark, Ambrose Doskow, New York City, of counsel, for trustee.

Wilfred Feinberg, New York City, Trustee.

George Zolotar, New York City, of counsel, for Securities & Exchange Commission.

Nathaniel L. Goldstein, Atty. Gen., Samuel Stein, Asst. Atty. Gen., for Industrial Commissioner.

Irwin Geiger, Washington, D. C., for Louis and Michael Cooper t/a Cooper Equipment Company, Objectors.

IRVING R. KAUFMAN, District Judge.

The Court: I have before me a proposed plan of reorganization for the debtor.

The petition for reorganization of the debtor was approved and the trustee appointed by order of this Court dated April 25, 1952. Approximately one year prior, on April 3, 1951, a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., had been approved and the debtor's affairs were administered under the supervision of a Referee in Bankruptcy from April 3, 1951 until February 25, 1952, when the Chapter XI petition was dismissed with the Referee reserving jurisdiction.

Upon that dismissal the debtor operated eleven restaurants as its only business. (It now operates nine, having given up two during this proceeding). Principally because of inadequate financing, the restaurants incurred further losses and within a period of less than two months after the dismissal of the Chapter XI petition, a petition, was filed with the Referee seeking to foreclose on certificates of indebtedness which the Chapter XI Receiver had issued. Thereupon, this reorganization proceeding was commenced with the filing of a petition on April 23, 1952.

█ The debtor's present plight, and its future prospects, can be readily summarized. It is insolvent, and has been so found by order of this Court on August 20, 1952. See Bankruptcy Act, § 1(19), 11 U.S.C.A. § 1(19); Meyer v. Dolan, 2, Cir., 1944, 145 F.2d 880, certiorari denied 1944, 324 U.S. 867, 65 S.Ct. 916, 89 L.Ed. 1422. Consequently any plan of reorganization will not provide for participation by the debtor's stockholders. See Dudley v. Mealey, 2 Cir., 1945, 147 F.2d 268, 273, certiorari denied 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991. Its starvation for working capital has driven the debtor into a Chapter XI proceeding and that continued debilitation is principally responsible for its presence here. New and substantial investment is needed and in fact has been offered. This offer is the result of diligence on the part of the trustee and extensive explorations and negotiations by him, and is the core of the plan before me.

Time is a vital element here. The new investment must be made within the very near future because the debtor's only vital assets are its operating restaurants, most of the leases for which have clauses providing for their termination, either unconditionally or at the option of the landlord, in the event of bankruptcy. Thus, quite literally, the debtor's day-to-day survival rests on the sufferance of its landlords. Much of the trustee's effort in this proceeding has been spent in holding them at bay, or keeping them pacified, with the prospect of an early formulation and consummation of a plan of reorganization as the basis for negotiating new leases. Expedition, therefore, is quite essential.

Further than this, there are large outstanding claims against the debtor for taxes and Chapter XI Receiver's certificates which, by order of that earlier proceeding, are a first lien upon all the property of the debtor. Any participation by the claimants, to say nothing of general creditors, depends upon substantial investment in the debtor. The sole alternative to such investment is liquidation in bankruptcy which would not realize enough money to pay the Chapter XI Receiver's certificates, and it follows that general creditors would receive nothing in such a liquidation.

█ I shall comment briefly upon the salient aspects of the plan and state succinctly the essential reasons for my holding, as I now do, that the plan complies with Sec. 216 of the Bankruptcy Act, 11

U.S.C.A. § 616, and is, in all respects, fair, equitable and feasible, as required by Sec. 174 of the Bankruptcy Act, 11 U.S.C.A. § 574.

■ The heart of a plan of reorganization is its classification and treatment of creditors. The classifications in this plan are well founded in law and in equity. The wage claimants in Class 1 would, in a straight bankruptcy proceeding, have priority under Section 64, sub. a(2), 11 U.S.C. A. § 104, sub. a(2). They are properly accorded priority here and their claims will be satisfied in cash.

■ Placement of the Federal Government's tax claims in Class 2 pays heed to Section 199 of the Bankruptcy Act, 11 U.S. C.A. § 599, and the priority accorded it through its receipt of subordinated debentures respects the common law right of a sovereign state to priority over unsecured creditors. Marshall v. New York, 1920, 254 U.S. 380, 41 S.Ct. 143, 65 L.Ed. 315.

■ The distinct classification of state and local taxing authorities into Class 3 is in accord with In re Sixty-Seven Wall Street Restaurant Corp., D.C.S.D.N.Y. 1938, 23 F.Supp. 672, and its priority treatment through receipt of subordinated debentures rests on the same sound theory as that applied in the case of Federal tax claims.

■ The payment of Class 4 claims from the specific fund established pursuant to the order dismissing the Chapter XI petition is, to the extent those claims are allowed, a fair treatment of this class in the whole context of the instant reorganization and the events leading to it. The trustee's power to administer the fund is well-founded in Emil v. Hanley, 1943, 318 U.S. 515, 522, 63 S.Ct. 687, 87 L.Ed. 954.

■ Holders of Chapter XI administration claims for whom no provision was made in the special fund discussed above are entitled to priority which, in their Class 5, they will be given in view of the recognition of their rights stated clearly in the order dismissing the Chapter XI proceeding, and because these creditors did in fact extend the debtor credit while it was in the straits of the Chapter XI situation.

■ Class 6, the holders of Chapter XI receiver's certificates, hold a first lien on the debtor's property and such a prior-proceeding lien must be discharged. Amick v. Hotz, 8 Cir., 1939, 101 F.2d 311, certiorari denied 307 U.S. 637, 59 S.Ct. 1033, 83 L.Ed. 1518; In re Granada Apartments, 7 Cir., 1939, 104 F.2d 528, certiorari denied Woods v. Indemnity Ins. Co., 1939, 308 U.S. 557, 60 S.Ct. 104, 84 L.Ed. 468. Considering the fact that the certificates were issued for cash when the company was in serious difficulty, they are unquestionably entitled to high priority, and the "absolute priority rule" makes it clear that reorganization is impossible unless they are discharged. Northern Pacific R. Co. v. Boyd, 1913, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931.

■ The transfer of the four stores and 10 per cent of the new stock is a fair and equitable resolution of the claims of this class, and I am convinced that the terms of this solution were intelligently and justly arrived at through the kind of compromise necessary in a reorganization proceeding. Group of Institutional Investors v. Chicago, Milwaukee, St. P. & P. R. Co., 1945, 318 U.S. 523, 563, 63 S.Ct. 727, 87 L.Ed. 959. Such compromise is inherently impossible to reach through precise mathematical computations.

■ The subdivisions within Class 7 are reasonably formulated. All three sub-classes have this in common: they are holders of general claims which are to be satisfied by receipt of that portion of the reorganized company's stock which remains after the issuance of 48 per cent of the new stock to the new interests and 10 per cent to holders of the Chapter XI Receiver's certificates. The practice of distributing equity securities to holders of participating claims in the lowest order of priority is well established. Case v. Los Angeles Lumber Products Co., Ltd., 1939, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110.

Sub-class 7(a) is the orthodox general creditor classification.

■ Sub-class 7(b) represents those holding claims resulting from the rejection of executory contracts in the Chapter XI and this proceeding. As required by the Bankruptcy Act, § 202, 11 U.S.C.A. § 602, they are deemed creditors. In re Greenpoint Metallic Bed Co., 2 Cir., 1940, 113 F.2d 881, 884.

Sub-class 7(c) represents those claims for Chapter XI administration expenses, the holders of which accepted the obligation of the debtor or waived the deposit of funds for the payment thereof. A line of straight bankruptcy cases furnishes, by analogy, strong support for the distinct treatment of this sub-class, e. g. In re Aktiebolaget Kreuger & Toll, 2 Cir., 1938, 96 F.2d 768. Similar holdings under Chapter X, 11 U.S.C.A. § 501 et seq., cases further justify this classification. Elias v. Clarke, 2 Cir., 1944, 143 F.2d 640, 647, certiorari denied 1944, 323 U.S. 778, 65 S. Ct. 191, 89 L.Ed. 622.

I now come to the objections to the plan. There are three formal objections, none of which persuades me that the plan before me should be altered in any way.

■■ The objection of Louis Cooper and Michael Cooper doing business as Cooper Equipment Company to their receipt of subordinated debentures instead of cash is not well-taken. It is falsely premised since, contrary to their contention, the transfer of the Atlantic City store is not a "sale" within the meaning of the Chapter XI Referee's order, but even if it were, the filing of the petition in this proceeding deprived the Referee of his control over the proceeds. That control now rests in this Court which, by the terms of Section 258 of the Bankruptcy Act, 11 U.S.C.A. § 658, is obligated to make "such provision as may be equitable for the protection of the obligations incurred" in the prior proceeding. As a matter of law, the Cooper claim is not an administrative claim of this proceeding. In re James Butler Grocery Co., 2 Cir., 1938, 100 F.2d 376; In re A. Roth Co., 7 Cir., 1942, 128 F.2d 428, and hence it need not be paid in cash. Furthermore, the equitable nature in which this claim is treated is stressed by the fact that other such

debts of the Chapter XI Receiver for which no money was deposited are being treated in precisely the same manner.

■ The Collector of Taxes for the District of Columbia objects to the plan to the extent that it will have "to accept other than money" as payment for taxes due it. There is no legal merit to this objection. By virtue of the August 20 amendment to the plan neither this nor any other taxing authority will have to accept anything other than money as payment for the taxes due. The new form of subordinated debenture is in essence a method of postponing the full payment in money due, and during the period of postponement interest would be payable at the rate of 6 per cent. The distraint powers of all taxing authorities may be used in the event of a default under the subordinated debentures. The implicit assumption of this objection is that Congress, which enacted the District of Columbia Revenue Act, D.C.Code 1951, § 47–101 et seq., intended a departure with respect to District of Columbia taxes from the policy which the Congress has embodied in the Bankruptcy Act. The assumption that the District of Columbia taxes are entitled to special treatment not accorded to taxes owing to the United States Treasury is completely unwarranted. In this connection it is interesting to note that the Treasury has filed no objection to its treatment under the plan.

■ Finally, the New York State Industrial Commissioner raises objections which, upon analysis, cannot stand. It is alleged that the time of payment of taxes due this authority is unreasonably extended for approximately five years. Under the mechanics of the subordinated debentures, such an extension may in fact never occur, those obligations being discharged before the date of their maturity. As a matter of discretion, I deem this provision fair in these circumstances.

■ The Industrial Commissioner also objects that interest would not be payable at the statutory rate which, it is alleged, would deprive the State of its rights in violation of the absolute priority rule. The contention is devoid of legal merit.

State taxes do not have an absolute legal priority, and a bankruptcy court will not give effect to a state statute which creates a priority. Strom v. Peikes, 2 Cir., 1941, 123 F.2d 1003, 138 A.L.R. 937.

The classification as well as the priority of this claimant is a matter of judicial discretion. In re Palisades-on-the-Desplaines, 7 Cir., 1937, 89 F.2d 214, 217; In re Sixty-Seven Wall Street Restaurant Corp., supra. The face amount of the claims of the taxing authorities includes interest only to the date of the filing of the reorganization petition and not for the period in which the bankruptcy is proceeding, and the established practice will be followed here. City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710; Pavone Textile Corp. v. Bloom, 1951, 302 N.Y. 206, 97 N.E.2d 755, affirmed 1952, 342 U.S. 912, 72 S.Ct. 357.

The plan is found to be fair, equitable and feasible and is approved.